**Marcia R. HARRISON, Appellant,**

v.

**Otis R. BOWEN, Secretary, H.H.S.**

No. 86–5168.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 9, 1986.

Decided April 3, 1987.

David H. Shapiro, with whom Irving Kator and Amy E. Wind, Washington, D.C., were on the brief, for appellant.

Stuart H. Newberger, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before STARR and DOUGLAS GINSBURG, Circuit Judges, and McGOWAN, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge D.H. GINSBURG.

DOUGLAS GINSBURG, Circuit Judge: In April 1983, Marcia Harrison was removed from her position as attorney-advisor in the Office of General Counsel of the Department of Health and Human Services (HHS). In December 1983, she filed a complaint against HHS in district court that, as later amended, alleged that, in removing her, HHS violated agency regulations, deprived her of her job without due process, and discriminated against her on the basis of age (which was 65 years at the time) in violation of the Age Discrimination in Employment Act (ADEA).[1] She later claimed that her removal also violated the Civil Service Reform Act of 1978 (CSRA).[2]

In January 1986, the district court granted HHS' motion for partial summary judgment, dismissing Harrison's claims based on the agency regulations and the Due Process clause of the Constitution. Soon thereafter, Harrison voluntarily stipulated to a dismissal with prejudice of her ADEA claim, so that she could immediately appeal the summary judgment order.

We hold that the district court lacked jurisdiction to review Harrison's claims based on the CSRA and the agency regulations implementing it, and that she was not denied due process. We accordingly affirm the judgment below.

## I. Factual Background

In 1981, HHS instituted a system for the formal annual performance appraisal of each of its lawyers, in accordance with § 203(a) of the CSRA, 5 U.S.C. § 4302 (1982), and Office of Personnel Management (OPM) regulations (now found in 5 C.F.R. Part 430 (1986)). Each lawyer received one of five ratings[3] for each of a series of "critical" and "non-critical" job elements.[4] These job element ratings were then combined to obtain an overall performance appraisal for that lawyer.[5]

When this appraisal system was instituted, Harrison was a GS–14 attorney-advisor at HHS, having worked there (and at its predecessor, the Department of Health, Education, and Welfare) as a lawyer since 1968. At a performance appraisal progress review meeting in September 1982, Assistant General Counsel Darrel Grinstead informed Harrison that her "legal writing"

---

1. 29 U.S.C. § 621 *et seq.* (1982).

2. Pub.L. No. 95–454, 92 Stat. 1111 (codified as amended in scattered sections of 5 U.S.C.). On appeal, Harrison has argued that, in removing her, HHS violated § 203(a) of the CSRA, 5 U.S.C. § 4303 (1982). She did not present this claim in her amended complaint, and the district court did not address it in its memorandum granting partial summary judgment. Harrison did raise the claim to the district court in a February 1985 memorandum, however, almost one year before that court's order. We therefore treat the CSRA claim as properly before this court.

3. At the relevant time, these ratings were: substantially exceed, exceeded, fully met, partially met, and failed to meet.

4. During the period in question, Harrison's five "critical" job elements were (1) writing, analysis and research skills; (2) legal advice; (3) timeliness of performance; (4) effectiveness in dealing with client, colleagues, supervisors, courts and others; and (5) quality of performance. The three "noncritical" job elements were (1) creativity; (2) industry, dependability, and dedication; and (3) communication and cooperation with other divisions and regions.

5. There were five possible appraisals for overall performance: outstanding, excellent, fully satisfactory, minimally satisfactory, and unsatisfactory.

and "legal advice" (both critical job elements for Harrison) had been unsatisfactory and that, if they did not improve during the next three months while she worked under a new supervisor, he would take appropriate action. Early in 1983, when the three months had run, Harrison received her performance appraisal for the period between October 1, 1981, and December 31, 1982.[6] She was rated as having only "partially met" the two critical job elements in question and she received an overall appraisal of "minimally satisfactory."

On March 18, 1983, Grinstead further notified Harrison in writing that her new supervisor's "conclusions [concerning her performance] were essentially the same as mine in that she rated you less than fully satisfactory in" legal writing and analysis. Grinstead then stated that he considered her work in 1983 to be "for the most part unsatisfactory," describing several specific assignments to illustrate the point. Grinstead therefore informed Harrison that she would be removed from her position "not sooner than April 17, 1983," i.e., no less than thirty days from the time of the notice, based on his evaluation of her performance from March 18, 1982, to March 18, 1983. The letter also apprised her of her rights to procedural review within HHS, which included the "right to be represented in this matter by an attorney or other representative ... an opportunity to respond orally and in writing to this proposal ... not later than April 1, 1983 [and the right to receive] a final written decision which must be concurred in by ... Samuel Turner, Deputy General Counsel for Program Review."

On April 4, 1983, Harrison responded to Grinstead in writing, through her attorney. In her letter, she (1) objected to his reliance on the one year period ending in March 1983, rather than the fifteen month performance rating period ending December 31, 1982; (2) disputed the accuracy of his

description of her post-December 31, 1982 projects; (3) asserted that she was constitutionally entitled to "an opportunity for a hearing at which [she] could defend against [his] charges"; and (4) stated that she believed she was the victim of age discrimination.[7]

Grinstead replied in writing on April 8, 1983. In response to her charge that he had used the wrong time period for evaluating her work, Grinstead stated that "the statute makes absolutely clear that I must base my decision only on instances of unacceptable performance during the one year period immediately prior to the date of my notice of the proposed action. 5 U.S.C. Section 4303(c)(2)(A)." He again described examples of her work during 1983 that "indicate unacceptable performance in critical elements 1 (written work) and 2 (legal analysis)." Citing authority, he rejected her contention that she was "entitled to any procedural rights beyond those which [she had] already been granted." Grinstead also denied that his decision was based in any part on her age, but he explained to her the departmental grievance procedure for instituting an age discrimination claim. Finally, he stated that she "will have the opportunity to make an oral reply to Mr. Samuel Turner, Deputy General Counsel, who must concur in my decision before it becomes effective."

Harrison and her attorney met with Turner on April 13, 1983, and he later concurred in Grinstead's decision. Harrison was terminated effective April 17, 1983.

## II. NON-CONSTITUTIONAL CLAIMS

### A. Civil Service Reform Act

Harrison contends that her removal violated the procedural and substantive protections provided in Chapter 43 of the Civil Service Reform Act, 5 U.S.C. § 4303, and in implementing regulations issued by OPM

6. During the implementation of the appraisal system, the first review period was fifteen months long, rather than the usual twelve months. See OPM Instruction No. 81-2, pt. III.A, and HHS Instruction 430-4-50.

7. As noted above, Harrison has since abandoned this claim.

and HHS. As an initial matter, we must determine whether the district court had jurisdiction over these claims. We look first to the statutory claims.[8] Since the CSRA does not expressly provide for review of these claims in the district court, Harrison argues that jurisdiction may be based upon either an implied right of action under the CSRA or upon the judicial review provisions of the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706.

### i. *The Statutory Scheme*

Harrison's jurisdictional arguments, and the reason they must fail, cannot be understood without an overview of the entire CSRA. Title I of the CSRA establishes several broad "merit system principles" for federal personnel management generally. These include, for example, norms against various types of invidious discrimination and against taking reprisals against whistle blowers, and in favor of fair and equitable treatment of employees. One principle is that "[e]mployees should be retained on the basis of the adequacy of their performance ... and employees should be separated who cannot or will not improve their performance to meet required standards." 5 U.S.C. § 2301(b)(6).

The CSRA also establishes specific standards and procedures for implementing these broad principles. Chapter 75 outlines the standards and procedures governing removals, demotions, suspensions, and other job actions initiated in order to "promote the efficiency of the service." This chapter enables the government to deal with employee misconduct. Chapter 43, under which Harrison was removed, provides that agencies are to use a performance appraisal system, like the HHS system outlined above, by which they are annually to evaluate their employees' performance. Chapter 43 also provides the standard and the procedures under which the government may remove or demote employees for unacceptable performance. In addition to providing the government with specific authority, in chapters 43 and 75, to take actions necessary to ensure adequate employee performance and conduct, the CSRA provides employees with specific substantive rights with respect to these actions, as well as protection against various types of unfair treatment (termed "prohibited personnel practices").

The CSRA also establishes the procedural framework through which employees may vindicate these rights. In creating these procedures, the CSRA dramatically altered the pre-existing institutional arrangement:

Title II of the CSRA abolishes the Civil Service Commission and replaces it with two new agencies, the MSPB [Merit Systems Protection Board] and the Office of Personnel Management (OPM). The OPM, headed by a single director responsible to the President, supervises the administration of the civil service. The MSPB, an independent agency consisting of three members, is charged with protecting the merit system principles and adjudicating conflicts between federal workers and their employing agencies. The Act also establishes within the Board an independent [Office of] Special Counsel responsible for investigating and prosecuting prohibited personnel practices, employment discrimination, unlawful political activities, arbitrary withholding of information requested under the Freedom of Information Act, and any other

---

**8.** Harrison contends that 5 U.S.C. § 4303 permits removals only for "unacceptable performance," and that the "1–year period" of review, § 4303(c)(2)(A), must be that 1–year period upon which the most recent annual performance appraisal was based. The March 1982–March 1983 period did not so correspond, and therefore, according to Harrison, Grinstead could not justify her removal on the basis of his determination that her work during 1983 was "for the most part unsatisfactory." Instead, he would have to base any job action on her overall performance appraisal rating of "minimally satisfactory," which Harrison contends does not constitute "unacceptable performance" under § 4303.

Because we hold that we do not have jurisdiction to review her CSRA claims, we do not reach these arguments and express no opinion as to their merit. We note, however, that the Federal Circuit has held that the 1–year removal period under § 4303(c)(2)(A) need not coincide with the appraisal period. *Weirauch v. Dep't of Army,* 782 F.2d 1560, 1563 (Fed.Cir.1986).

violations of law within the federal civil service.

*Frazier v. Merit Systems Protection Board*, 672 F.2d 150, 154 (D.C.Cir.1982) (citations omitted). Title II of the CSRA established a concomitant remedial scheme, which we have described before briefly as follows:

> (1) for major personnel actions specified in the statute ("adverse actions"), direct judicial review after extensive prior administrative proceedings; (2) for specified minor personnel actions infected by particularly heinous motivations or disregard of law ("prohibited personnel practices"), review by the Office of Special Counsel, with judicial scrutiny "limited, at most, to insuring compliance with the statutory requirement that the OSC perform an adequate inquiry"; and (3) for the specified minor actions not so infected, and for all other minor personnel actions, review by neither OSC nor the courts.

*Carducci v. Regan*, 714 F.2d 171, 175 (D.C. Cir.1983) (citation omitted).

The CSRA also divides federal employees into four broad groups: (1) those in the "competitive civil service"; (2) those who are "preference eligible"[9]; (3) those in the "excepted" civil service; and (4) "probationers," being those who have one year or less of service. The substantive rights and procedural protections to which any particular employee is entitled often depend upon where he or she falls in this typology. In general, the CSRA provides competitive

and preference eligible employees more extensive rights and protections than it provides to excepted and probationary employees. The exact protections—both substantive and procedural—available to each group in any specific situation, however, can only be determined by inspecting the particular provision of the CSRA that either authorizes the government to take the disputed job action or provides the employee with the right that he or she claims was violated.[10]

### ii. *The Availability of Judicial Review*

■ With this statutory framework in mind, we turn now to Harrison's § 4303 claims to determine whether the CSRA impliedly provides for their review in the district court. As a government lawyer, Harrison was lawfully "excepted" from the competitive civil service under OPM regulations. 5 C.F.R. § 213.3102(d) (1983). *See* 5 U.S.C. § 2103; *Doe v. United States Dep't of Justice*, 753 F.2d 1092, 1107 n. 14 (D.C. Cir.1985). Being "excepted" diminishes but does not extinguish her rights. For as she argues and as HHS concedes, OPM regulations do not exclude lawyers from the definition of "employee" in Chapter 43, 5 U.S.C. § 4301(2)(G). *See* 5 C.F.R. § 430.-201(c) (1983).[11] Thus, although Harrison was not entitled to the full panoply of protections granted by the CSRA to a competitive employee, she was covered by the standard and by the procedures of 5 U.S.C. § 4303(a)-(d)[12] for removal or demotion of

---

**9.** 5 U.S.C. § 2108(3) defines "preference eligible" to mean a veteran of the armed services and, in certain circumstances, his wife and mother.

**10.** For a summary of the major changes wrought by the CSRA, *see Lovshin v. Dep't of Navy*, 767 F.2d 826, 830–36 (Fed.Cir.1985) (en banc), *cert. denied*, — U.S. —, 106 S.Ct. 1523, 89 L.Ed.2d 921 (1986), and *Frazier v. Merit Systems Protection Board*, 672 F.2d at 153–56.

**11.** 5 U.S.C. § 4301(2)(G) states:
> For the purpose of this subchapter—
> (2) "employee" means an individual employed in or under an agency, but does not include—
> . . . . .
> (G) an individual occupying a position not in the competitive service excluded from cov-

erage of this subchapter by regulations of the Office of Personnel Management. . . .
In 5 C.F.R. § 430.201(c) (1983), OPM excluded some individuals in the expected service, but not lawyers. *See Doe v. United States Dep't of Justice*, 753 F.2d at 1107 n. 14. These exceptions are now found at 5 C.F.R. § 430.202(c) (1986).

**12.** The provisions of § 4303 relevant to this case are:
> (a) Subject to the provisions of this section, an agency may reduce in grade or remove an employee for unacceptable performance.
> (b)(1) An employee whose reduction in grade or removal is proposed under this section is entitled to—
> (A) 30 days' advance notice of the proposed action which identifies—

an "employee," [13] which she claims HHS violated when removing her.

After they have exhausted the internal agency proceedings required by § 4303(a)–(d), the CSRA provides employees with external avenues of redress. Section 4303(e) grants to competitive service and preference eligible employees the right to appeal demotions and removals to the Merit Systems Protection Board (MSPB) for administrative review. The MSPB is granted broad investigative and remedial powers, *see* 5 U.S.C. § 1205, and its orders may be appealed to the Court of Appeals for the Federal Circuit.[14]

Section 4303(e) does not grant excepted employees such recourse to the MSPB. *See Schwartz v. Dep't of Transportation*, 714 F.2d 1581, 1582 (Fed.Cir.1983). From this, Harrison concludes that the express terms of the CSRA leave her without any avenue to redress her allegedly wrongful removal from her government job. She is incorrect on this point, however; excepted

> (i) specific instances of unacceptable performance by the employee on which the proposed action is based; and
> (ii) the critical elements of the employee's position involved in each instance of unacceptable performance;
> (B) be represented by an attorney or other representative;
> (C) a reasonable time to answer orally and in writing; and
> (D) a written decision which—
> (i) in the case of reduction in grade or removal under this section, specifies the instances of unacceptable performance by the employee on which the reduction in grade or removal is based, and
> (ii) unless proposed by the head of the agency, has been concurred in by an employee who is in a higher position than the employee who proposed the action.
>
> . . . . .
>
> (c) The decision to retain, reduce in grade, or remove an employee—
> (1) shall be made within 30 days after the date of expiration of the notice period, and
> (2) in the case of a reduction in grade or removal, may be based only on those instances of unacceptable performance by the employee—
> (A) which occurred during the 1–year period ending on the date of the notice under subsection (b)(1)(A) of this section in connection with the decision; and
> (B) for which the notice and other requirements of this section are complied with.

employees have an alternative means of redress, as we described in *Carducci*. Section 101(a) of the CSRA, 5 U.S.C. § 2302, describes a series of "prohibited personnel practices," one of which is to

> take or fail to take any other personnel action [defined in § 2302(a)(2)(viii) to include "a performance evaluation under chapter 43"] if the taking of or failing to take such action violates any law, rule, or regulation implementing, or directly concerning, the merit system principles contained in section 2301 of this title.

5 U.S.C. § 2302(b)(11). Any employee in a "covered position," which includes excepted as well as competitive service employees and thus appears to cover lawyers, § 2302(a)(2)(B), may submit allegations concerning "prohibited personnel practices" to the Office of Special Counsel (OSC) of the MSPB for investigation. *See id.* § 1206(a)(1).

■ Congress modeled the OSC after the Office of General Counsel of the Na-

---

**13.** *See Schwartz v. Dep't of Transportation*, 714 F.2d 1581, 1581 n. 1 (Fed.Cir.1983). The dictum to the contrary in *Doe v. United States Dep't of Justice*, 753 F.2d at 1097 n. 4 ("non-veteran employees in the excepted civil service are not protected by the ... 'removal for unacceptable performance' provisions of CSRA") is mistaken. The operative assertion in n. 4 of *Doe* was correct, however: non-veteran excepted employees "are not protected by the 'removal for cause' ... provisions of CSRA," 5 U.S.C. § 7513, because 5 U.S.C. § 7511(a)(1) excludes such employees from its coverage. *See Fausto v. United States*, 783 F.2d 1020, *adhered to, reh. denied*, 791 F.2d 1554, 1556 (Fed.Cir.1986), *cert. granted*, —— U.S. ——, 107 S.Ct. 872, 93 L.Ed.2d 827 (1987). *Cf. Williams v. IRS*, 745 F.2d 702, 704 (D.C.Cir. 1984) (per curiam) (interpreting 5 U.S.C. § 7501(1), which applies to suspensions of 14 days or less).

Harrison's supervisor Grinstead evidently believed that she was covered under § 4303(a)–(d). In his April 8, 1983 letter to her, he stated that "as an excepted employee being removed for performance based reasons, you are entitled only to the procedures set forth in 5 U.S.C. Chapter 43 and implementing [OPM] and [HHS] regulations."

**14.** 5 U.S.C. § 7703(b)(1). Prior to the Federal Courts Improvement Act of 1982, Pub.L. 97–164, Title I, § 144, 96 Stat. 45, appeal was to the Court of Claims or the court of appeals.

tional Labor Relations Board. *See Wren v. Merit Systems Protection Board,* 681 F.2d 867, 873 (D.C.Cir.1982). Like the General Counsel, the Special Counsel is a largely autonomous public prosecutor with broad investigative powers. *See* 5 U.S.C. § 1206(b)(3)–(4). When the OSC

> determines that there are reasonable grounds to believe that a prohibited personnel practice has occurred, exists, or is to be taken which requires corrective action, [it] shall report the determination together with any findings or recommendations to the [MSPB].... [It] may include in the report recommendations as to what corrective action should be taken.

*Id.* § 1206(c)(1)(A).[15] Unlike preference eligible and competitive service employees, excepted employees may not appeal directly to the MSPB without the intercession of the OSC.[16] Once OSC has taken up their cause, however, they may themselves appeal adverse orders of the MSPB to the Court of Appeals for the Federal Circuit. *See id.* § 7703(a)(1), (b)(1).

As a "covered person" alleging a "prohibited personnel practice"—here a removal in violation of the dictates of § 4303—Harrison could have presented her claims to the OSC. *Cf. Carducci,* 714 F.2d at 175. Though this means of potential redress was available to her, the record gives no indication that Harrison tried to use it before she opted to bring this suit in the district court.

For the district court to have jurisdiction over her § 4303 claims, Harrison must rely either upon an implied right of action under the CSRA or upon the review provisions of

the APA. With regard to an implied right of action, "[w]hen Congress enacts new legislation, the question is whether Congress intended to create a private remedy as a supplement to the express enforcement provisions of the statute." *Merrill Lynch v. Curran,* 456 U.S. 353, 378, 102 S.Ct. 1825, 1839, 72 L.Ed.2d 182 (1982); *see Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). Review is more readily available under the APA, where a court may find that a "statute precludes judicial review," 5 U.S.C. § 701(a)(1), only when "'clear and convincing evidence' of [such] legislative intent" exists. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967). Thus, under either test, judicial review of Harrison's statutory claims would be foreclosed upon a showing that such review would frustrate the intent of Congress in enacting § 4303 in particular and the CSRA in general.

It would be most helpful, therefore, to know why an express right of action was not provided. Unfortunately, the legislative history is silent concerning the specific question why excepted employees, who were granted substantive and internal agency procedural rights, were not given an express right to appeal to the MSPB.[17] We therefore look to the overall scheme of the CSRA, as we have discerned it in previous cases, to determine whether district court review would be consistent with the purposes of the law. We look also to our previous decisions addressing whether the OSC remedy expressly granted by Congress should be supplemented by us in

---

**15.** We have recently indicated that an employee may seek mandamus to compel the OSC to perform its duties. *Barnhart v. Devine,* 771 F.2d 1515, 1524–27 (D.C.Cir.1985).

**16.** Recourse to the OSC is also available to preference eligible and competitive service employees, as they are "covered persons" as well. At least in cases of removal or reduction in grade, however, these two groups need not rely on the OSC to take up their cause; they may in such cases appeal as of right directly to the MSPB, 5 U.S.C. § 4303(e), and therefrom to the Federal Circuit. For a more extensive discussion of the OSC and the MSPB, see *Barnhart v. Devine,* 771 F.2d 1515 (D.C.Cir.1985), and *Frazier v. Merit*

*Systems Protection Board,* 672 F.2d 150 (D.C.Cir. 1982).

**17.** The legislative history indicates that the lack of an express right to appeal to the MSPB was intentional, but does not explain the underlying reasons. *See* H.R.Rep. No. 95–1403, 95th Cong., 2d Sess., 20–21 (1978), *reprinted in* House Comm. on Post Office and Civil Service, 96th Cong., 1st Sess., *Legislative History of the Civil Service Reform Act of 1978,* at 657–58 (*Legislative History*); *Schwartz v. Dep't of Transportation,* 714 F.2d at 1582. *See also* S.Rep. No. 95–969, 95th Cong., 2d Sess., 41–44 (1978), *reprinted in Legislative History,* at 1505–08.

order to guarantee the rights that Congress clearly intended employees to have.[18]

In *Borrell v. United States Int'l Communications Agency,* 682 F.2d 981, 987–88 (D.C.Cir.1982), and *Cutts v. Fowler,* 692 F.2d 138, 139–40 (D.C.Cir.1982), we held that removed and reassigned probationary employees do not have an implied right of action under the CSRA to enforce the prohibition against reprisals for whistleblowing, but must seek relief through the OSC because such reprisals constitute a "prohibited personnel practice." We found that Congress "established in the Act a detailed enforcement scheme to effect its purpose," and that the OSC's mandate to screen allegations of reprisal reflected Congress's concern "not only to provide an effective and expeditious process for investigating whistleblower allegations, but also to protect against abuse of that process to halt termination based on unsatisfactory job performance." *Borrell,* 682 F.2d at 987, 988. *See Cutts,* 692 F.2d at 140. We further noted the dictate in 5 U.S.C. § 7703 that, except for certain discrimination suits, judicial review of agency actions taken under the authority of the CSRA would be exclusively in the court of appeals or the Court of Claims.[19] For these reasons, we concluded broadly that "Congress did not mean to allow the district courts any extensive supervisory jurisdiction over the way in which the CSRA's mandates are enforced." *Borrell,* 682 F.2d at 988.

In *Carducci v. Regan,* we held that a non-probationary employee in the competitive service has no right of action under the APA to dispute a reassignment purportedly made for "poor performance." Under the CSRA, a reassignment does not rise to the status of an "adverse action" for which review is available before the MSPB and the Federal Circuit, but at most represents a "prohibited personnel practice." 714 F.2d at 175. In rejecting the employee's contention that he should be able to seek judicial review under the APA, rather than relying solely on the OSC, we referred to the reasoning underlying *Borrell* and *Cutts:*

> The point of both cases is that the exhaustive remedial scheme of the CSRA would be impermissibly frustrated by permitting, for lesser personnel actions not involving constitutional claims, an access to the courts more immediate and direct than the statute provides with regard to major adverse actions. That principle governs here.

*Id.* at 174. Thus, the holding in *Carducci* not only precluded judicial enforcement of certain rights granted to employees in the CSRA; as the court there noted, it also had the effect of depriving employees of a right of judicial review under the APA that they probably had prior to enactment of the CSRA.[20]

We followed *Carducci* in *Gray v. Office of Personnel Management,* 771 F.2d 1504, 1507–12 (D.C.Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1478, 89 L.Ed.2d 732 (1986), where we held that administrative law judges (ALJs) alleging a "prohibited personnel practice" could not seek direct judicial review of a failure to promote, but

---

**18.** The parties did not cite, and we have not discovered, any previous case discussing whether excepted employees may seek direct judicial review of § 4303 claims. *Schwartz v. Dep't of Transportation, supra,* addressed only the question whether a lawyer with § 4303 claims may bypass the OSC and proceed directly to the MSPB. In *Huber v. Merit Systems Protection Board,* 793 F.2d 284 (Fed.Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 907, 93 L.Ed.2d 857 (1987), the court held that an excepted employee could not appeal a dismissal under 5 U.S.C. § 7513 to the MSPB because he is not an "employee" under 5 U.S.C. § 7511(a)(1), and thus is not protected under § 7513. Similarly, in *Williams v. IRS,* 745 F.2d 702 (D.C.Cir.1984), we held that a lawyer could not seek judicial review of his suspension because the CSRA provisions governing suspensions do not extend to excepted employees. *See* 5 U.S.C. §§ 7501(1), 7503. Finally, in *Towers v. Horner,* 791 F.2d 1244 (5th Cir.1986), the court held that a lawyer could not seek judicial review of a "prohibited personnel practice," but must rely on the OSC. In *Towers,* however, the plaintiff was denied a reclassification, a job action not covered by § 4303.

**19.** See text and note *supra* note 14.

**20.** Courts previously reviewed under the APA nonconstitutional claims that were not provided for under Title VII, the Age Discrimination in Employment Act, or the Equal Pay Act. *See Carducci,* 714 F.2d at 174 n. 1.

must present their claims to the OSC. In reaching that result, we rejected the ALJs' attempt to distinguish *Carducci* based on the special protections afforded ALJs in the CSRA:

> Congress, in outlining the elaborate procedures for review of adverse agency actions in the CSRA, expressly imposed a requirement on the MSPB that it make a determination of good cause (after an opportunity for hearing) before the challenged "adverse action" is taken by an agency against an ALJ. Tellingly, however, no special provision for ALJs was set forth by Congress with respect to review of "prohibited personnel practices." Clearly, had Congress intended to treat ALJs differently as to "prohibited personnel practices," it could have done so explicitly just as it did with respect to "adverse actions." We can not and will not, to achieve what is plainly a laudable policy goal sought by appellants, add a statutory provision which the First Branch did not include.

*Id.* at 1510–11 (citations and footnote omitted). We followed *Carducci* more recently in *National Treasury Employees Union v. Egger*, 783 F.2d 1114 (D.C.Cir.1986) (employees claiming that job reclassification resulted from a "prohibited personnel practice" must rely on the OSC), and in *Barnhart v. Devine*, 771 F.2d 1515 (D.C.Cir. 1985) (employees denied job reclassification may not seek to mandamus OPM, but must rely on the OSC).

While our approach to the CSRA may need to differ when a constitutional right is at stake, even in that context the result will often be the same, as the Supreme Court's decision in *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), illustrates. The question before the Court in *Bush* was whether, for violations of a federal employee's constitutional rights resulting from a demotion, a judicial damage remedy under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), should be created to supplement the administrative and judicial review procedures available un-

der the civil service laws. For purposes of deciding this question, the Court assumed that the employee's First Amendment rights had been violated, and that "civil service remedies were not as effective as an individual damages remedy and did not fully compensate him for the harm he suffered.... Thus, [it assumed] a federal right has been violated and Congress has provided a less than complete remedy for the wrong." 462 U.S. at 372–73, 103 S.Ct. at 2408–09 (footnotes omitted). The Court therefore faced a situation similar to that presented in the cases discussed above, and it provided the same answer, refusing to create a judicial remedy to supplement those provided by Congress:

> The question is not what remedy the court should provide for a wrong that would otherwise go unredressed. It is whether an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy for the constitutional violation at issue. That question obviously cannot be answered simply by noting that existing remedies do not provide complete relief for the plaintiff. The policy judgment should be informed by a thorough understanding of the existing regulatory structure and the respective costs and benefits that would result from the addition of another remedy for violation of employees' First Amendment rights.
>
> ... In all events, Congress is in a far better position than a court to evaluate the impact of a new species of litigation between federal employees on the efficiency of the civil service. Not only has Congress developed considerable familiarity with balancing governmental efficiency and the rights of employees, but it also may inform itself through factfinding procedures such as hearings that are not available to the courts.

*Id.* at 388–89, 103 S.Ct. at 2416–17.[21]

In each of these cases the principle to which the courts have adhered is clear.

---

**21.** *See United States v. Connolly,* 716 F.2d 882 (Fed.Cir.1983) (en banc), *cert. denied,* 465 U.S.

The remedial scheme of the CSRA is to be read as it is written to serve the reformatory purpose Congress clearly had. In an area so peculiarly within the ken and concern of Congress as federal personnel management, reading between the lines to interpolate remedies Congress did not provide can only lead the court into error. We believe that the reasoning in *Bush, Borrell, Cutts, Carducci,* and *Gray* applies in Harrison's situation as well. Like the civil service provisions involved in those cases, § 4303 represents a "detailed enforcement scheme," *Borrell,* 682 F.2d at 987, that provides a range of different rights to a range of differently classified federal employees. At one end of the spectrum are non-probationary employees who are either in the competitive civil service or are preference eligible. The CSRA affords these employees the substantive and internal agency procedural protections in § 4303(a)–(d); the right to seek relief through the OSC; and the right in § 4303(e) to bypass the OSC and proceed directly to the MSPB. At the opposite end of the spectrum are probationary employees, to whom the CSRA grants none of these rights. Falling somewhere between these poles are excepted employees who are neither probationary nor preference eligible. If OPM does not issue regulations under § 4301(2)(G) excluding them from the coverage of § 4303, excepted employees have the same substantive and procedural rights in § 4303(a)–(d) that preference eligible and competitive

service employees have. Like those two groups, non-excluded excepted employees may also present their § 4303 claims to the OSC. Congress, however, was apparently unwilling to confer on excepted employees a status equal, across the board, with that of preference eligible and competitive service employees. For unlike them, excepted employees may not appeal their claims directly to the MSPB, and if OPM issues regulations excluding them from § 4303,[22] then they are treated no better than probationary employees.

Just as *Carducci* found that "the exhaustive remedial scheme of the CSRA would be impermissibly frustrated by permitting" direct judicial review of lesser CSRA claims, when major claims had to be litigated first in the MSPB, 714 F.2d at 174, we believe that the remedial scheme in § 4303 would also be upset if excepted employees were able to seek direct judicial review of § 4303 claims, while preference eligible and competitive service employees, to whom the CSRA generally affords greater protections, must exhaust an appeal before the MSPB prior to seeking judicial review. It is not irrelevant either, that the rights of excepted employees under § 4303 may be eliminated altogether "whenever [OPM] determines that ... is in the interest of good administration." S.Rep. No. 95–969, *supra* n. 22.[23] Rights so conditionally held are no less rights for the condition, but it would be curious indeed if they were favored with greater

1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984); citing the legislative history, the court stated:
>Because Congress could have permitted probationers to challenge removals, but expressly declined to do so, we find it incongruous to suppose that appellee has an implied private right of action under the Civil Service Reform Act to seek judicial review of his dismissal. It is the province of other branches, and not the courts, to determine whether probationary employees should be granted the right to judicial review of adverse actions against them. Congress has decided against judicial review in the Reform Act, and we are not free to disturb that judgment.

*Id.* at 886 (citations omitted); and *United States Dep't of Justice (INS) v. FLRA,* 709 F.2d 724, 728–30 (D.C.Cir.1983).

**22.** The Senate Report includes the following discussion of this process:

>This section also authorizes [OPM] to exclude an agency or positions not in the competitive service from this subchapter. This authorization gives OPM the flexibility to make exceptions to the coverage of this subchapter whenever it determines that an exception is in the interest of good administration, and to revoke an administrative exception when no longer warranted. It is expected that this authority to exempt agencies or positions will be used sparingly.

S.Rep. No. 95–969, 95th Cong., 2d Sess., 41 (1978), *reprinted in Legislative History, supra* n. 17, at 1505.

**23.** Indeed, the burden of a right to review, judicially engrafted onto § 4303, might itself be a predicate for OPM to remove classes of government workers from the coverage of that section.

engines for enforcement than other rights more firmly vested elsewhere in the same Act.

■ We therefore conclude that Congress intended to foreclose district court review of § 4303 claims by nonpreference eligible excepted employees. These employees consequently have neither an implied right of action under the CSRA [24] nor a right to judicial review under the APA.[25] As a result, the district court lacked jurisdiction of Harrison's CSRA claims. We pause to emphasize, however, that excepted employees seeking to enforce their § 4303 rights "are by no means being left remediless." *Gray v. Office of Personnel Management*, 771 F.2d at 1512. They may present their § 4303 claims to the OSC.

Nothing in the [CSRA] or in the regulations suggests that the Special Counsel is powerless to correct abuses of the civil service system. On the contrary, Congress clearly intended the OSC to be the watchdog of the merit system, a watchdog which should not be ignored by employees anxious to resort to federal court.

*Barnhart v. Devine*, 771 F.2d at 1527. This comment bears repeating in Harrison's case, since the record does not indicate that she so much as stopped at the OSC before marching off to the district court.

### B. *Agency Regulations*

■ Relying on *Service v. Dulles*, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957), and *Vitarelli v. Seaton*, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959), Harrison argues that the district court may compel HHS to comply with the regulations that both it and OPM promulgated in order to implement § 4303.[26] The principle she

---

**24.** Other circuits have reached the same result in similar situations. *E.g., Veit v. Heckler*, 746 F.2d 508, 510–11 (9th Cir.1984) (no implied right of action under the CSRA for agency actions that are neither adverse actions nor prohibited personnel practices). The *Veit* court, citing *Carducci* and other cases with approval, stated that "the comprehensive nature of the procedures and remedies provided by the CSRA indicates a clear congressional intent to permit federal court review as provided in the CSRA or not at all." *Id.* at 511; *see Towers v. Horner*, *supra* n. 18, 791 F.2d at 1247; *Weatherford v. Dole*, 763 F.2d 392 (10th Cir.1985) (no implied right of action under the CSRA to contest reassignment); *Schrachta v. Curtis*, 752 F.2d 1257 (7th Cir.1985) (no implied right of action under the CSRA to enforce the "merit system principles" in 5 U.S.C. § 2301); *Braun v. United States*, 707 F.2d 922, 924–25 (6th Cir.1983) (whistleblower has no implied right of action under the CSRA, but must rely on the OSC); *accord Broadway v. Block*, 694 F.2d 979, 983–84 (5th Cir.1982).

**25.** Again, other circuits are in agreement on this general point. *E.g., Broadway v. Block, supra* n. 24, in which the court stated that:

[T]he CSRA creates an extensive scheme regulating civil service personnel decisions. Some agency actions are reviewable by circuit courts, some by district courts, and some by no court at all. We decline to allow an employee to circumvent this detailed scheme governing federal employer-employee relations by suing under the more general APA. 694 F.2d at 986; *see Kotarski v. Cooper*, 799 F.2d 1342, 1350 (9th Cir.1986) (demoted probationer may not obtain review under the APA); *Pinar v.*

*Dole*, 747 F.2d 899, 912–13 (4th Cir.1984), *cert. denied*, 471 U.S. 1016, 105 S.Ct. 2019, 85 L.Ed.2d 301 (1985) (no right under APA to judicial review of "prohibited personnel practices"); *Veit v. Heckler, supra* n. 24, 746 F.2d at 510–11; *Braun v. United States, supra* n. 24, 707 F.2d at 926–27.

The First Circuit in *Dugan v. Ramsay*, 727 F.2d 192, 194–95 (1st Cir.1984), held that a job applicant may seek judicial review under the APA to contest his rejection, but we rejected *Dugan* in *Gray*, 771 F.2d at 1510. *See Barnhart v. Devine*, 771 F.2d at 1522 n. 11.

**26.** Harrison relies on OPM Instruction 81–2, and HHS Instruction 430–4, which are identical in all relevant respects. Both were promulgated pursuant to 5 U.S.C. § 4302, which requires agencies to establish appraisal systems in accordance with regulations to be issued by OPM. Harrison relies on the following provisions in Instruction 81–2, which covers excepted lawyers:

X.I. If the employee has only partially met or is only partially meeting one or more critical job elements or has failed or is failing to meet one or more noncritical job elements, appropriate action *will* be taken. It may include the supervisor preparing a plan to assist the employee improve performance or a decision to reassign the employee.

J. If the employee has failed or is failing to meet one or more critical job elements, appropriate action *will* be taken. It may include initiating steps toward demoting or removing the employee.

(emphasis in original). *See* HHS Instruction 430–4–100 (I)–(J).

invokes is not without limits, however, where Congress has erected them. Specifically, an agency cannot create through its implementing regulations a right of review withheld by the underlying statute.[27] The same principle applies whether the regulations are procedural or undertake to provide substantive protections. As we have stated before, "no [agency] rules, understandings or circumstances can contravene the intent of the legislature regarding the employment entitlements that can be conferred." *Carducci,* 714 F.2d at 177.

■ In the CSRA, Congress specifically provided that claims arising from regulations implementing the CSRA would be handled like claims arising directly under the statute. Paragraph 5 U.S.C. 2302(b)(11) and related provisions make it a "prohibited personnel practice" to remove an employee from a covered position in violation of a "regulation implementing, or directly concerning," *inter alia,* Chapter 43 of the CSRA.[28] As with her claims under 5 U.S.C. § 4303 therefore, Harrison could have brought her claims under the OPM and HHS regulations to the OSC. She cannot seek review in the district court of her claims under those regulations for the same reason that she cannot seek district court review of her CSRA claims: Congress intended employees in her position to pursue such claims through the OSC.

The *Service* and *Vitarelli* cases are not to the contrary. Although the Court in each case held that district courts may compel an agency to comply with its own regulations governing employee dismissal, neither of those regulations implemented a statutory scheme that itself precluded the plaintiffs from obtaining judicial review of the rights created both therein and thereunder, or expressly provided an alternative means of redress.[29] In fact, in *Service* and *Vitarelli* the relevant statutes appear neither to have provided by themselves nor to have precluded the agency from providing substantive or procedural protections to the employees. Thus, district court enforcement of the rights created in the regulations did not conflict with the known intent of Congress. In Harrison's situation, by contrast, her rights under the OPM and HHS regulations arose out of the protections granted by the CSRA; she may not vindicate those rights in the district court

---

Harrison argues that this language precluded her dismissal because, having partially met two critical job elements and failed none, her performance fell under subsection X.I. where dismissal is not mentioned as an "appropriate action," in contrast to subsection X.J., where dismissal is not mentioned. The district court disagreed, relying on the "including" language of the two subsections, as well as on HHS Instruction 432–1, which states, at 432–1–20, that: [A]fter an unsatisfactory or minimally satisfactory performance appraisal ... the immediate supervisor must initiate appropriate action. The official with delegated authority to propose reduction-in-grade or removal action must consider reduction in grade and removal as possible actions to be taken.... As with Harrison's CSRA claim, we express no opinion on the merits of this claim, given our holding that the district court lacked jurisdiction over it.

**27.** *See Schwartz v. Dep't of Transportation,* 714 F.2d at 1582–83 (agency could not by regulation confer upon nonpreference eligible excepted employees a right of review before the MSPB for § 4303 claims, when § 4303(e) withheld such right from that class of employees); *Giordano v. Roudebush,* 617 F.2d 511, 515–17 (8th Cir.1980) (regulations implementing 38 U.S.C. § 4106 could not grant to probationary physicians administrative review rights granted by statute only to those with tenure); *cf. United States Dep't of Justice (INS) v. FLRA,* 709 F.2d 724, 728–30 (D.C.Cir.1983) (the FLRA could not compel agency to bargain over grievance procedures for probationary employees, since § 4303 contemplates their summary dismissal).

**28.** *See* commentary on § 2302(b)(11), *supra* at 1511.

**29.** For this reason, nothing in *Doe v. United States Dep't of Justice,* 753 F.2d at 1098–1101, is to the contrary, either. In *Doe,* we noted in passing that this court may compel an agency to abide by its regulations providing procedural protections to employees. Nothing in that case, or in its references to *Vitarelli* and *Service, id.* at 1098, 1100 n. 7, however, suggests that the court would enforce such procedural regulations if they implement a statute that precludes judicial review to enforce compliance with the regulations. *Ashton v. Civiletti,* 613 F.2d 923, 928–30 (D.C.Cir.1980), and *Mazaleski v. Treusdell,* 562 F.2d 701, 717–19 (D.C.Cir.1977), both of which are pre-CSRA cases, are also distinguishable on this basis.

when Congress has prescribed another avenue of review for such claims.[30]

## III. CONSTITUTIONAL CLAIMS

Finally, Harrison argues that, in removing her, HHS deprived her of property and liberty interests in violation of constitutional due process. The district court rejected these contentions, finding that her dismissal did not deprive her of any liberty; that she had no property interest in an excepted position; and that, assuming *arguendo* that Harrison had been deprived of a liberty or of a property interest, the procedural protections afforded her by HHS satisfied the requirements of due process.

■ It is clear, as the district court concluded, that Harrison suffered no deprivation of liberty by reason of her removal. It is true that "[g]overnment 'stigmatization' of an individual, joined with impairment of 'some more tangible interests such as employment,' can constitute a deprivation of liberty." *Carducci*, 714 F.2d at 176 n. 5, quoting *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976); *see Doe v. United States Dep't of Justice*, 753 F.2d at 1111. In Harrison's case, however, there was no publication of the reasons for her dismissal, and thus no stigmatic harm. *See Mazaleski v. Treusdell*, 562 F.2d 701, 712 (D.C.Cir.1977). Moreover, even if the reasons had been published, Harrison would not have suffered a deprivation of liberty with respect to either her reputation or to a "foreclosure" of her employment opportunities. She was dismissed for an "unsatisfactory job performance," which fact if publicized does not carry with it the sort of opprobrium sufficient to constitute a deprivation of liberty. As we have before, we must discriminate between a dismissal "for dishonesty, for having committed a serious felony, for manifest racism, for serious mental illness, or for lack of 'intellectual ability, as distinguished from [ ] performance....' " *Id.* at 714 (citations omitted); *see Board of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972); *Doe v. United States Dep't of Justice*, 753 F.2d at 1104–12; *Carducci*, 714 F.2d at 176 n. 5. The former characteristics imply an inherent or at least a persistent personal condition, which both the general public and a potential future employer are likely to want to avoid. Inadequate job performance, in contrast, suggests a situational rather than an intrinsic difficulty; as part of one's biography it invites inquiry, not prejudgment.

Whether Harrison lacked a property interest in her position is a more difficult question. Prior to enactment of the CSRA, excepted lawyers were held to have no property interest in their jobs. *Fiorentino v. United States*, 607 F.2d 963, 965–69, 221 Ct.Cl. 545 (1979), *cert. denied*, 444 U.S. 1083, 100 S.Ct. 1039, 62 L.Ed.2d 768 (1980); *Mervin v. FTC*, 591 F.2d 821, 828 (D.C.Cir. 1978). Although we have not defined its exact contours,[31] § 4303 does on its face constrain an agency in removing an "employee," including an excepted employee such as Harrison who is not excluded from the coverage of § 4303 by an OPM regulation under § 4301(2)(G).[32] If so, then Har-

---

**30.** We do not depart from the oft-stated principle repeated in *Frazier v. Merit Systems Protection Board*, 672 F.2d at 164, that "agencies may 'adopt procedures beyond the minima explicitly prescribed by statute' "; here, a right of review in district court would not be "beyond the minimal," but in conflict with what Congress has prescribed.

**31.** *See* text at *supra* n. 8.

**32.** As indicated above, *supra* n. 13, Grinstead explicitly relied upon § 4303 to justify Harrison's removal. The parties have not addressed the issue of whether HHS could have removed Harrison under 5 U.S.C. § 7513, on the ground that her removal "promote[d] the efficiency of the service." We note that for purposes of § 7513, the definition of "employee" in § 7511(a)(1) includes only preference eligible and competitive service employees. *Cf. Lovshin v. Dep't of Navy*, 767 F.2d 826, 842–43 (Fed.Cir. 1985) (en banc), *cert. denied*, — U.S. —, 106 S.Ct. 1523, 89 L.Ed.2d 921 (1986); *Darby v. IRS*, 672 F.2d 192, 194–96 (D.C.Cir.1982) (per curiam).

In *Chu v. United States*, 773 F.2d 1226, 1228 n. 2 (Fed.Cir.1985), the court stated with regard to Public Health Service (PHS) doctors in the excepted service that "it is well established that an employing agency is free to discharge excepted service employees without cause." For support, the court referred to the removal provisions of § 7513, as well as to *Fiorentino* and other pre-

rison had a conditional entitlement to continued employment that, under established precedent, is deemed a property interest within the scope of the due process protection.[33]

We need not decide this question, however, for as the district court alternatively held, even assuming *arguendo* that Harrison had a property interest in her position, her removal from that position did not violate the requirements of due process. Grinstead first warned Harrison in September 1982 that, unless her work improved, he would have to take appropriate action, and he assigned her to a new supervisor to oversee her performance after that date. When her new supervisor also found Harrison's work unsatisfactory, Grinstead punctiliously followed the review procedures of § 4303(b)(1). As the district court found, Harrison "received 30 days written notice of her proposed removal, an opportunity to respond orally and in writing, which she exercised by counsel, and a further opportunity personally to present her case to a higher official, who concurred in [her] supervisor's decision." *Harrison v. Heckler*, Civ. No. 83–3776, slip op. at 8 n. 12 (D.D.C. Jan. 8, 1986). Having received the extensive procedural protections provided by the statute, and having had the right to seek relief through the OSC, Harrison received at least as much process as she was due as a matter of constitutional right. *Cf.*

*Foster v. Ripley*, 645 F.2d 1142, 1150–51 (D.C.Cir.1981); *contrast Doe v. United States Dep't of Justice*, 753 F.2d at 1112–14.

For the reasons stated, the judgment is *Affirmed.*

---

CSRA cases. The court did not address § 4303, however, undoubtedly because the PHS abolished the doctors' position, along with others, not on account of their performance but because the PHS closed the facility in which they worked. *Huber v. Merit Systems Protection Board*, 793 F.2d 284, 288 (Fed.Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 907, 93 L.Ed.2d 857 (1987), is distinguishable for a similar reason.

**33.** *See Board of Regents v. Roth*, 408 U.S. at 577–78, 92 S.Ct. at 2709; *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972); *Ashton v. Civiletti*, 613 F.2d 923, 928–30 (D.C.Cir 1979). This would be true notwithstanding the fact that § 4303(e) precludes direct review before the MSPB for nonpreference eligible, excepted employees. As the Supreme Court has indicated, the limited procedural protection offered by a statute does not preclude the creation of a property interest. *Cleveland Board of Education v. Loudermill*, 470

U.S. 532, 539–41, 105 S.Ct. 1487, 1492, 84 L.Ed.2d 494 (1985). Assuming that § 4303 imposes conditions upon removal that create an entitlement to continued employment, an employee may seek judicial review to ensure that he or she is provided procedural due process when removed under that section. *Cf. White v. Office of Personnel Management*, 787 F.2d 660, 666 (D.C.Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 276, 93 L.Ed.2d 252 (1986); *Foster v. Ripley*, 645 F.2d 1142, 1149–51 (D.C.Cir.1981).

Harrison did not put forward a Bivens claim for damages; we therefore need not address whether such a claim would be available, under *Bush v. Lucas*, to excepted employees for whom the CSRA provides less procedural protection than for employees in the competitive civil service. Two divided panels of this court recently explored the reach of *Bush*, but their opinions have been vacated in relevant part pending rehearing en banc. *Spagnola v. Mathis*, 809 F.2d 16 (D.C.Cir.1986); *Hubbard v. Environmental Protection Agency*, 809 F.2d 1 (D.C.Cir.1986).