George L. GARROW, Jr., Appellant,

v.

Wendy Lee GRAMM,* Chairman,
Commodity Futures Trading
Commission, Appellee.

No. 87–5273.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 16, 1988.

Decided Aug. 23, 1988.

---

* Susan M. Phillips was CFTC Chairman when Garrow filed his complaint on December 16, 1986. When Phillips left that position, Kalo A. Hineman, Acting Chairman of the CFTC, re- placed Phillips as defendant. Wendy Lee Gramm is now the current CFTC chairman and has been substituted under Fed.R.App.P. 43(c).

Kirk T. Manhardt, Atty., Commodity Futures Trading Com'n, with whom Jay L. Witkin, Deputy General Counsel, Commodity Futures Trading Com'n, Washington, D.C., was on the brief, for appellee. Robin A. Rosenbluth, Atty., Commodity Futures Trading Com'n, Washington, D.C., also entered an appearance for appellee.

Joseph B. Scott, with whom Douglas B. Huron, Washington, D.C., was on the brief, for appellant.

Before MIKVA and BUCKLEY, Circuit Judges, and GARTH,** U.S. Senior Circuit Judge, for the Third Circuit.

Opinion for the Court filed by Senior Circuit Judge GARTH.

GARTH, Senior Circuit Judge:

Plaintiff-appellant, George L. Garrow, Jr. ("Garrow") commenced this action against defendant-appellee, Susan M. Phillips, Chairman of the Commodity Futures Trading Commission ("CFTC"), alleging that he possessed a property right in his federal employment, and that his Fifth Amendment rights were violated when he was terminated from his position as an attorney for the CFTC, without pretermination notice and a hearing. The United States District Court for the District of Columbia granted summary judgment in favor of the CFTC, concluding that as an Excepted Service employee, Garrow did not possess a property right in his continued federal employment, and thus was not entitled to pretermination notice and a hearing when he was discharged for insubordination. We affirm.

** Sitting by designation pursuant to 28 U.S.C. § 294(d).

## I.

Garrow was employed as a GS–13 Excepted Service attorney at the CFTC from September 2, 1980, until he was terminated for insubordination, pursuant to Chapter 75 of the Civil Service Reform Act of 1978 ("CSRA") on September 16, 1986. Garrow, seeking reinstatement, filed a complaint against the Chairman of the CFTC on December 18, 1986, in the United States District Court for the District of Columbia, alleging that he could only be fired for good cause because he had a property interest in his continued employment at the CFTC and that his Fifth Amendment rights were violated when he was not afforded pretermination notice and a hearing before losing his position. Cross motions for summary judgment were filed by Garrow and the CFTC. The district court's order entered June 24, 1987, granted the CFTC's motion and denied Garrow's motion on the grounds that Excepted Service employees do not have a property interest in continued federal employment.

The district court recognized that Garrow had been removed under Chapter 75, 5 U.S.C. § 7501 et seq., of the CSRA and correctly noted that employees (such as Garrow) in the Excepted Service who are not veterans, are not classified as "employees" for the purposes of Chapter 75. Garrow v. Phillips, 664 F.Supp. 2, 3 (D.D.C. 1987). The district court therefore held that Garrow as a non-veteran Excepted Service employee had been explicitly excluded by statute from the protections of Chapter 75. It then addressed Garrow's argument that a property right in his position existed by virtue of Chapter 23. The district court rejected this claim as well, holding that the prohibited personnel practices of Chapter 23, pertain wholly to conduct unrelated to work performance, that Chapter 23 did not create any property interest in employment and that in any event, Garrow has never contended that he was discharged for reasons unrelated to his employment. Garrow appealed.

## II.

In 1978, Congress enacted a comprehensive overhaul of the civil service system when it passed the Civil Service Reform Act of 1978, Pub.L. No. 95–454, 92 Stat. 1111 (1978). This statute established three different categories of civil service employees, Senior Executive Service, 5 U.S.C. § 2101a, Competitive Service, 5 U.S.C. § 2102, and Excepted Service, 5 U.S.C. § 2103.[1] Within each of the three categories the CSRA provides for preferential treatment of certain veterans and their relatives. 5 U.S.C. § 2108.

Three different sections of the CSRA govern personnel actions taken against members of the civil service:

Chapter 23, 5 U.S.C. § 2301 *et seq.,* "establishes the principles of the merit system of employment, § 2301, and forbids an agency from engaging in certain 'prohibited personnel practices,' including unlawful discrimination...." *United States v. Fausto,* [——] U.S. [——], 108 S.Ct. [668] at 672 [98 L.Ed.2d 830 (1988)].

Chapter 43, 5 U.S.C. § 4301 *et seq.* governs adverse personnel actions based on unacceptable job performance.

Chapter 75, 5 U.S.C. § 7501 *et seq.,* sets forth the procedures for adverse personnel actions taken against a civil servant in order to promote "efficiency of the service." Such actions, include among others, misconduct of an employee, and as is the case here, insubordination of an employee.

Each of the three categories of civil service i.e., Senior Executive Service, Competitive Service, and Excepted Service, afford federal employees different procedures and protections governed by Chapters 23, 43 and 75 of the CSRA. For example, as described in *United States v. Fausto,* Chapter 23, which prohibits certain personnel practices, including unlawful discrimination, coercion of political activity, nepotism and reprisal against "whistle-blowers," protects, among others, nonpreference excepted service employees who do not occupy positions of a confidential or policy making nature. 108 S.Ct. at 672. Such employees, who claim to be the victims of a prohibited practice, may file charges with the Merit System Protection Board ("MSPB").

On the other hand, Chapter 43 protections are provided to non-preference members of the Excepted Service (such as Garrow) but denies them the right to an administrative or judicial review of the agency's final action—a right afforded to other categories of employees under Chapter 43.

Under Chapter 75, non-veteran, "Excepted Service" employees, such as Garrow, may be dismissed without cause, without prior notice, and without a termination hearing, or an opportunity to appeal the decision. *See United States v. Fausto,* 108 S.Ct. at 673–74; *Doe v. Department of Justice,* 753 F.2d 1092, 1097 n. 4, 1100 & n. 8 (D.C.Cir.1985); *Chu v. Schweiker,* 690 F.2d 330, 334 (2d Cir.1982); *Fowler v. United States,* 633 F.2d 1258, 1262 (8th Cir.1980) ("federal employees in the Excepted Service may be terminated at any time, without either a statement of reasons for discharge or adverse action appeal rights"). Competitive Service employees on the other hand are protected by the statute and may be dismissed under Chapter 75 of CSRA for cause only. 5 U.S.C. § 7513 (1982).

## III.

Despite the fact that the statute, 5 U.S.C. § 7511, excludes non-veteran Ex-

---

**1.** The Supreme Court has described the three categories as follows:

The CSRA divides civil service employees into three main classifications that can be generally described as follows: "Senior Executive Service" employees are those who occupy high-level positions in the Executive Department, but for whom appointment by the President and confirmation by the Senate is not required. 5 U.S.C. § 3132(a)(2). "Competitive Service" employees are all other employees for whom nomination by the President and confirmation by the Senate is not required, and who are not specifically excepted from the competitive service by statute or by statutorily authorized regulation. § 2102. "Excepted Service" personnel are the remainder—those who are in neither the competitive service nor the Senior Executive Service. § 2103.

*United States v. Fausto,* —— U.S. ——, 108 S.Ct. 668, 670 n. 1, 98 L.Ed.2d 830 (1988).

cepted Service employees from receiving a notice of termination and a hearing, Garrow, nevertheless, contends that he was due such process and that his discharge therefore violated his Fifth Amendment rights to his continued employment. In support of this claim, Garrow relies on *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed. 2d 494 (1985).

### A.

In *Loudermill* the Cleveland Board of Education, after learning that Loudermill, a security guard had completed his employment application dishonestly, discharged him. Loudermill was not afforded an opportunity to respond to the charges against him or challenge his dismissal. *Id.* at 535, 105 S.Ct. at 1489. Loudermill, who was a "classified civil servant" under Ohio law, was entitled to retain his job "during good behavior and efficient service," and could not be dismissed "except ... for ... misfeasance, malfeasance, or nonfeasance in office." *Id.* at 538–39, 105 S.Ct. at 1491–92.

The *Loudermill* Court noted that property interests were generally not created by the Constitution, but must rather be the product of some statute or other source of law. *Id.* at 538, 105 S.Ct. at 1491 (*citing Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)) ("To have a property interest ... a person ... must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.") The Supreme Court held that the Ohio statute, "which allowed for the discharge of a civil service employee only for misfeasance, malfeasance or nonfeasance in office" gave the employee a legitimate property right in his employment—a right, protectable by the Fifth Amendment. The Court went on to hold that the Fifth Amendment mandated that Loudermill be given prior notice of his termination and an opportunity to respond to the charges against him.

### B.

Garrow argues that, like the Ohio statute in *Loudermill*, 5 U.S.C. § 2302(b)(10) grants him a "legitimate claim of entitlement" to his job. We cannot agree.

Section 2302(b)(10) states in pertinent part:

> Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority ... discriminate for or against any employee or applicant for employment on the basis of conduct which does not adversely affect the performance of others....

Unlike *Loudermill*, § 2302(b)(10) includes no provision limiting discharge for reasons of "cause" or "misfeasance." Indeed, our attention has yet to be called to any case where a court has held that a government employee has a protected property interest in employment where language qualifying discharge for "cause" or for comparable reasons, is not present. Thus, it is not surprising that the authorities cited to us by Garrow adhere to that qualification. *See e.g. Small v. Inhabitants of City of Belfast*, 796 F.2d 544, 549 (1st Cir.1986) (removal only "for cause after notice and hearing"); *Rodez v. Village of Maywood*, 641 F.Supp. 331, 334 (N.D.Ill. 1986) (statute required removals to be based upon "merit and fitness"). *Cf. Henderson v. Sotelo*, 761 F.2d 1093, 1098 (5th Cir.1985) ("[M]erely because a municipal personnel policy states that certain conduct may result in discharge does not necessarily mean that the city forfeited the right it would otherwise have to discharge without cause.") Since such limiting provisions are absent in Chapter 23, Garrow may not rely upon the terms of that statute to establish his property interest in continued employment.

It is possible, of course, to imagine a statute that would create a property interest in continued employment without imposing an explicit "for cause" termination requirement. Such a statute might set forth so comprehensive a list of prohibited reasons for termination that an employee would reasonably have as great an expecta-

tion of continued employment as one who knows he cannot be fired except for cause. But neither section 2302(b)(10) nor the other prohibited personnel practices of section 2302(b) even come close to creating such an expectation.

■ Not only does Chapter 23 fail to provide the requisite property interest for which Garrow contends, but the entire focus of that statute is addressed to a wholly different concern. Chapter 23, as the district court correctly held, is designed to prohibit personnel practices that are taken in response to an employee's off-duty conduct or interests that are *unrelated* to job performance. The actions taken by supervisory authorities against federal employees, which are proscribed by this statute include: discrimination on the basis of race, color, religion, sex, national origin, age, handicapped condition, marital status, political affiliations, nepotism, whistleblowing, retaliation, and the like. None of these proscriptions pertain to, nor do they have any relation to, the on-the-job performance of an employee's work. Indeed, the statute itself pointedly provides that the actions against an employee which are prohibited, are actions taken on the basis of conduct which "... does not adversely affect the performance of the employee or applicant or the performance of others ..." 5 U.S.C. § 2302(b)(10).

The legislative history of § 2302(b)(10) buttresses what the plain language of the statute teaches: that § 2302(b)(10) was intended to prohibit discrimination against activities that have no bearing on one's job performance. *See* House Conference Report No. 95–1717, 95th Cong. 2d Sess. at 131, *reprinted in* 1978 U.S. Code Congressional and Administrative News 2723, 2864 ("The conferees intend that only conduct of the employee or applicant that is related to the duties to be assigned to an employee or applicant or the employee's or applicant's performance or the performance of others may be taken into consideration in deter-

mining that employee's suitability or fitness.")

Congress codified this principle "to furnish guidance to federal agencies in carrying out their responsibilities in administering public business," and "to enable federal employees to avoid conduct which undermines the merit system principles and the integrity of the merit system." *See* Civil Service Reform Act of 1978, Findings and Statement of Purposes, Sec. 3, Pub.L. 95–454, 92 Stat. 1112. Thus, while § 2302(b)(10) provides extensive protection from discrimination of all types, where that discrimination is unrelated to on-the-job conduct and performance, it does not, as a result of those protections create a property interest in continued employment.[3]

Such interests can only be created by understandings, statutes, or rules that secure certain benefits and that support claims of entitlement to those benefits. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Such a property interest in this case, would have had to be defined by 5 U.S.C. § 2302(b)(10), as that statute is the only statute upon which Garrow relies to make the requisite showing that its substantive provisions give him a "legitimate claim of entitlement". *Griffith, v. Federal Labor Relations Authority*, 842 F.2d 487, 495 (D.C.Cir.1988) (citing to *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709). But, as we have earlier observed, no such substantive provisions supporting, or even indicating, a claim of entitlement are to be found in § 2302(b)(10). Nor, significantly, has Garrow, in his brief and argument, pointed to any.

Garrow's efforts to demonstrate an entitlement center on two arguments. First, he argues that a decision of this court (*Harrison v. Bowen*, 815 F.2d 1505 (D.C. Cir.1987)) intimated that Chapter 43 of the CSRA constrained the government in its authority to remove Excepted Service attorneys, thus creating a *"Loudermill* interest." We discuss that contention in more

---

**3.** Garrow does not contend that he was fired for reasons unrelated to his employment, nor could

he, as he was fired for insubordination.

detail in the following section. But, as a threshold matter, we point out that, however one may read the discussion of Chapter 43 in *Harrison*, Garrow, as the district court correctly noted, was not discharged under § 4303 and has not claimed that Chapter 43 affords him a property right in his position. 664 F.Supp. at 2 n. 1.

█ Garrow, relying on *Merritt v. Dept. of Justice*, 6 MSPB 493, 6 M.S.P.R. 585 (1981), next claims that he could not be discharged unless there was cause for this adverse personnel action, and that the reason for such action must be related to "efficiency of the service." Garrow styles this argument as a "nexus" requirement, contending "the nexus requirement is a significant substantive constraint on management's freedom in the personnel area." Brief of Appellant at 9.

We are not persuaded by Garrow's argument, which, as we read it, translates into no more than a requirement that an agency, which takes an adverse action against a Competitive Service employee "for cause" under Chapter 75, must demonstrate a nexus between the conduct asserted as "cause" and job performance. Such a requirement, however, has no application to Garrow an Excepted Service employee, for, as the district court has observed: *"Merritt* does not hold, or even suggest, that § 2302(b)(10) provides Excepted Service employees with a property interest in their jobs". 664 F.Supp. at 5 n. 2.[4]

Moreover, Garrow has yet to explain why Congress, in enacting Chapter 75 would expressly exclude Excepted Service employees from its protections and permit them to be discharged without cause, while at the same time Congress would require cause to be given for such discharges under Chapter 23. We can discern no reason why Congress should give back with one hand that which it has taken away with the other. We are thus satisfied that no property interest ever came into existence which would require cause to be shown, or other procedures to be afforded with respect to Garrow's discharge.

### C.

█ As earlier noted, Garrow, to support his claim of a property interest, relies heavily upon dictum in *Harrison v. Bowen*, 815 F.2d 1505 (D.C.Cir.1987). *Harrison* involved a suit by a government attorney, discharged under Chapter 43 for inadequate job performance, who alleged among other things, that her discharge deprived her of property interests in violation of due process. This court ruled that it need not decide the question whether the plaintiff, Harrison, had a property right in her employment requiring that she receive due process before being fired, since even if she did have such a right, the process she received was adequate. In discussing the claim generally, however, the *Harrison* court stated in dictum:

Although we have not defined its exact contours, § 4303 does on its face constrain an agency in removing an "employee." Including an excepted employee such as Harrison.... If so, then Harrison had a conditional entitlement to continued employment that, under established precedent, is deemed a property interest within the scope of the due process protection.

*Id.* at 1518–1519 (footnotes omitted). Garrow, drawing upon the language in *Harrison* quoted above, argues that § 2302(b)(10), similarly constrains an agency, and thus provides a property interest requiring due process protections.

The first and dispositive answer to Garrow's *Harrison* argument is the answer which we have previously given—Garrow was not discharged under Chapter 43 of the CSRA. Thus, whatever *Harrison*'s import, it can have no effect on Garrow's claim. Moreover, as the CFTC points out, *Harrison*'s dictum on which Garrow not

---

4. CFTC observes that Garrow does not allege, or even suggest, that the Commission violated section 2302(b)(10). Rather, Garrow raises a purely theoretical claim, namely, that section 2302(b)(10), by its mere existence, constrains federal personnel management and thus, as a matter of law, grants all excepted service employees a property interest in federal employment.

only seeks to rely, but which he now seeks to extend to Chapter 23, is just that: dictum, that does not constitute a holding. *Harrison* only *assumes* that 5 U.S.C. § 4303 imposes conditions that create an entitlement to continued employment. It does not HOLD that either Chapter 43 or Chapter 23 provides a property interest within the scope of due process protections.

Further, CFTC vehemently disputes that any constraint of employment discretion would create a property interest in continued employment, and charges that Garrow's assertion to the contrary, finds no expression in either this court's or any other court's decisions. Brief of Appellees at 15–17. We need not reach nor address this later contention of CFTC as it is clear to us that *Harrison* does not constitute binding authority which would afford Excepted Service employees in general, and Garrow in particular, with any property interest in continued employment.

## IV.

The order of the district court entered June 24, 1987, granting CFTC's motion for summary judgment will be affirmed.