**F. Robert WEIRAUCH, Petitioner,**

v.

**DEPARTMENT OF the ARMY, Respondent.**

**Appeal No. 85–2290.**

United States Court of Appeals, Federal Circuit.

Jan. 30, 1986.

Ernest C. Hadley, Passman and Broida, Washington, D.C., argued for petitioner. With him on brief was Edward H. Passman.

Robert A. Reutershan, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for respondent. With him on the brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director and Hilliary Stern. Captain Richard O. Hatch, Dept. of the Army, Office of the Judge Advocate General, Washington, D.C., of counsel.

Before DAVIS, BALDWIN and NIES, Circuit Judges.

NIES, Circuit Judge.

Petitioner F. Robert Weirauch seeks review of the final decision of the Merit Systems Protection Board (MSPB or board), 26 M.S.P.R. 53 (1985), sustaining the Department of the Army's removal of Weirauch under Chapter 43 from his position as Morale Support Officer. We affirm.

### Background

In September, 1981, Weirauch assumed the position of Morale Support Officer with the Department of the Army in Aschaffenburg, Germany. The position of Morale Support Officer is both supervisory and managerial in nature. While in that position, Weirauch was responsible for the moral support activity for the entire community, including operation of eleven subordinate shops, activities, and recreation facilities, i.e., an audio-photo facility, a bowling alley, and a swimming facility. He was removed in May, 1983, under Chapter 43 because of "unsatisfactory performance."

Sometime in early May, 1982, Weirauch drafted the performance appraisal criteria for his position which are now challenged (the May 1982 standards). The two critical elements pertinent here relate to the duties of (1) supervisory and personnel management and (2) plans/executes or oversees budgeted funds for the moral support program.

On June 7, 1982, Weirauch's supervisor, Lt. Col. Bain, issued a "Letter of Counseling" which expressed dissatisfaction with Weirauch's performance, suggested specific areas requiring improvement, specifically in personnel management and procurement, and warned of the need for improvement to avoid adverse action. On June 15, 1982, Lt. Col. Bain issued an interim evaluation of Weirauch's work, rating him unsatisfactory in, *inter alia*, both critical elements pertinent here.

On November, 1982, and then again in January and February, 1983, Weirauch was issued letters reprimanding him for specific instances of unsatisfactory performance in the budget and management areas.

On March 7, 1983, Weirauch was issued an appraisal of his performance for the period February 1, 1982–January 31, 1983, in which he was rated unsatisfactory in the above-mentioned two critical elements, as well as in non-critical areas. That second appraisal utilized the May 1982 standards with minor exceptions not pertinent here.*

On March 16, 1983, a set of revised critical elements and performance standards applicable to Weirauch's position for the period February 1, 1983–January 31, 1984 was issued. The next day his supervisor issued Weirauch a "Notice of Proposed Removal." The notice cited Weirauch's failure to meet the May 1982 standards in all of the critical job elements as well as in non-critical elements. The notice listed thirty-two specific instances in support of the charge that Weirauch failed to meet the various performance standards. The

---

* The second appraisal added one performance standard to the supervisory and personnel management element. However, in the second appraisal the agency evaluated Weirauch as hav-ing met the additional standard. The second appraisal also added a standard to an element not pertinent here.

final decision by the agency rested on twenty-five of the charges. Removal followed on May 6, 1982.

Weirauch appealed his removal to the MSPB. The presiding official upheld the performance standards, found that they were adequately communicated to Weirauch, and found that substantial evidence supported the agency's charge of Weirauch's failure to meet the performance standards for the critical elements relating to his responsibilities for personnel management and overseeing the budget. The presiding official also found that Weirauch was not prevented by the agency from meeting his standards, and that the removal was neither the result of the personal bias of his supervisor nor a form of retribution. Finally, the presiding official rejected Weirauch's argument that the agency should have taken action less severe than removal.

Weirauch petitioned the full board for review of the presiding official's decision, challenging his performance standards both on procedural and substantive grounds. The board agreed with Weirauch that the agency erred in so far as it evaluated Weirauch on the basis of the performance criteria issued March 16, 1983, for the period beginning February 1, 1983. Therefore, the board did not consider any incidents of unacceptable performance that occurred exclusively after January 31, 1983. However, the board otherwise found Weirauch's challenge to the presiding official's findings to be without merit, and it affirmed the presiding official's decision as modified.

### Opinion

On appeal, Weirauch does not dispute the merits of the charged incidents of poor performance. Rather, his argument is that the agency failed to comply with the procedural and substantive requirements of Chapter 43. Among his charges of irregularity are the following:

(1) The critical elements and performance standards therefor were improperly drafted because Weirauch himself was the principal author, and he was not sufficiently counseled.

(2) His performance was subjectively evaluated and, therefore, the standards were not "communicated."

(3) A performance rating by one supervisor was improperly changed by another.

(4) The agency failed in its duty to assist him in improving.

(5) The agency held him to one hundred percent performance.

Each of the above issues is fully treated by the board in its opinions and we agree with its conclusion that none of Dr. Weirauch's objections provides a meritorious basis for setting aside his removal. We see no need to repeat the board's analysis nor to detail the ample evidence that Weirauch's performance fell far short of fulfilling the duties of his position. However, Weirauch raises one issue not previously addressed by this court, which warrants attention and is discussed below.

### I.

Weirauch asserts that the agency failed to adequately communicate the standards within the time frame envisioned by the statute. 5 U.S.C. § 4302(b)(2) (1982) provides:

> Under regulations which the Office of Personnel Management shall prescribe, *each performance appraisal system shall provide for—*
>
> as soon as practicable, but no later than October 1, 1981, with respect to initial appraisal periods, and thereafter *at the beginning of each following appraisal period, communicating to each employee the performance standards and the critical elements of the employee's position.... [Emphasis added.]*

In this case, the agency adopted a performance appraisal plan which called for an appraisal period running from February 1 to February 1 of each year. The agency admits that it communicated new performance criteria to Weirauch some time after the February 1, 1982 starting date. Weir-

auch argues that Section 4302(b)(2) required the agency to communicate the critical elements and standards of his position before the start of the agency's formal appraisal period, February 1, 1982. Failure to meet that date, he urges, deprived him of the "opportunity to demonstrate acceptable performance," a right guaranteed by 5 U.S.C. § 4302(b)(6) (1982). Under Weirauch's interpretation, an employee is entitled to have the same standards for a year and performance evaluation must cover no less than that entire year's period.

The MSPB has interpreted § 4302(b)(2) as a substantive right of employees, namely, the right to be made aware of the critical elements and standards by which their performance is to be evaluated at the beginning of the appraisal period which forms the basis of the adverse action. *Cross v. Department of the Air Force*, 25 M.S.P.R. 353, 357 (1984); *Yorker v. EEOC*, 25 M.S.P.R. 538, 541 (1985). Under the MSPB's interpretation, an employee's rights are not tied to the officially designated appraisal period of the agency. Thus, performance evaluation of Weirauch based on incidents occurring from May, 1982, to February, 1983, was held to be proper because Weirauch was informed prior to that period of the critical elements and performance standards of his position and the period was long enough to afford him ample opportunity to improve.

We agree with the MSPB's interpretation, which accords with that of OPM as well and finds support in the legislative history. Congress expected agencies to perform appraisals *at least* once a year, S.Rep. No. 969, 95th Cong., 2d Sess 41 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News 2723, 2763, but it provided no statutory restriction on the number or frequency of evaluations of individual employees within the appraisal period fixed by the agency's master appraisal system. The Federal Personnel Manual specifically encourages evaluation more frequently than once a year. Fed. Personnel Manual, ch. 430, 5–6 (Dec. 31, 1980). Evaluation should be a continuing process. *Id.* at app. A,

¶ A–6. Agencies are to act as problems arise.

██ The statute prohibits action being taken under Chapter 43 against an employee on the basis of incidents which occurred before the one-year period preceding *the notice* of proposed adverse action. 5 U.S.C. § 4303(c)(2) (1982). Thus, one year represents a permissible maximum, but not minimum, appraisal period for an individual employee. Where an agency has a yearly appraisal period, the evaluation of an individual employee may encompass part of two official agency appraisal periods and may involve more than one standard, if a standard is changed. Provided the substantive rights of the employee are preserved (that is, communication of the standards beforehand and evaluation thereon after an opportunity to improve), that factual scenario is permissible under the statute. The period of appraisal of an employee for an adverse action and the agency's appraisal period need not coincide.

██ With respect to Weirauch, his performance was appraised on the basis of criteria communicated to him no later than May, 1982. Only incidents thereafter and before February 1, 1983, were considered in support of the unsatisfactory performance ratings given to him on which his removal is based. There was no statutory or regulatory violation in these procedures. The agency's failure to communicate the critical elements and standards to Weirauch on February 1, 1982, has nothing to do with his awareness of the critical elements and standards for the period for which he was evaluated. Thus, the appropriate interpretation of § 4302(b)(2) is that applied by the board. The agency must communicate the critical elements and performance standards to the employee at or before the beginning of the appraisal period which forms the basis of the adverse action. This interpretation guarantees the employee the substantive right provided by Congress, affords agencies the flexibility sought by Congress, *Wilson v. Department of Health and Human Services*, 770 F.2d 1048, 1052 (Fed.Cir.1985), and vindi-

cates the right of the public to an efficient and effective government, *Lovshin v. Department of the Navy,* 767 F.2d 826, 832 (Fed.Cir.1985).

The board found that the critical elements and standards were adequately communicated to Weirauch. Nothing in the record indicates that Weirauch was removed for specific instances occurring before the standards were so communicated. We hold that the board's finding is supported by substantial evidence.

## II.

■ In his reply brief, Weirauch challenges the objectivity of the performance standards upon which his removal was based. We see no point in discussing their adequacy in detail since the initial standards have been revised. However, we have carefully considered Weirauch's arguments and conclude that, in view of its being fleshed out with counseling, the "standard as a whole strikes us as within the statute, adequately gauged and informative to [petitioner], and readily attainable." *Wilson,* 770 F.2d at 1056.

In this connection, we feel compelled to add that a decision by this court in a particular case involving a particular standard is not *stare decisis* in the sense that the court endorses that standard for all time. The drafting of performance standards is a developing art. Fed. Personnel Manual at ch. 430, app. A, ¶ A–1. A standard found minimally satisfactory today and, thus, not arbitrary may not pass muster at a later time. In other words, the court's decision may not be taken as a direction to freeze the standard into place. Rather, agencies are obligated to follow OPM's directive that they must keep reviewing existing standards and must change them as evaluation techniques improve and experience with this effort is gained.

AFFIRMED.