John DePAUW, Petitioner,

v.

**U.S. INTERNATIONAL TRADE COMMISSION, Respondent.**

**Appeal No. 85–2451.**

United States Court of Appeals, Federal Circuit.

Jan. 30, 1986.

Peter B. Broida, Passman & Broida, Washington, D.C., argued for petitioner.

Charles H. Nalls, Office of the Gen. Counsel, U.S. Intern. Trade Com'n, Washington, D.C., argued for respondent. With him on brief were Lyn M. Schlitt, Gen. Counsel and Michael P. Mabile, Asst. Gen. Counsel.

Before DAVIS, BALDWIN and NIES, Circuit Judges.

DAVIS, Circuit Judge.

Petitioner John DePauw contends that his removal for unacceptable performance by respondent U.S. International Trade Commission (ITC or agency) was grounded in inadequate performance standards, and unsupported by either the evidence before the arbitrator (who upheld the agency's action) or by the arbitrator's own decision. We affirm.

### I.

Mr. DePauw was employed in 1970 by the then Tariff Commission (later, the ITC) as a commodity-industry analyst, grade GS–11. After three months he was promoted to GS–12, and the agency considered his performance satisfactory through September 1981. Thereafter, the ITC believed that the quality of his work was declining. For the appraisal period October 1, 1981— June 30, 1982, his performance was rated "minimally acceptable." In November 1982, he received an interim rating of "unacceptable" and he was given 90 days to improve. Petitioner's supervisor continued to be dissatisfied with his work, but an upper-level supervisor gave him another opportunity to improve by helping him obtain a reassignment to another division in the ITC's Office of Industries. DePauw agreed to accept a downgrading to grade GS–11.[1]

Some ten months after the reassignment, petitioner's new immediate supervisor issued him (in February 1984) an interim appraisal of "unacceptable." He was given 60 days to improve—a period later extended to 91 days. On May 22, 1984 petitioner went on sick leave and never returned to duty. Toward the end of July 1984, the ITC proposed to remove him for unacceptable performance during the improvement period. His removal was made effective November 9, 1984.

DePauw requested arbitration (in lieu of appealing to the Merit Systems Protection Board). After a hearing, the arbitrator denied the grievance. This appeal followed.[2]

### II.

Petitioner challenges the objectivity and propriety of the performance standards he was found not to have met. We have recently delved into the general sub-

---

1. In this position, DePauw was responsible for identifying, developing and maintaining data on assigned products and for interpreting trade data from the standpoint of comparability, classification and competitive factors.

2. The arbitrator is to apply the same substantive rules that the Merit Systems Protection Board (MSPB) would apply. *Cornelius v. Nutt,* —— U.S. ——, ——, 105 S.Ct. 2882, 2888–89, 86 L.Ed.2d 515 (1985). Accordingly, we gauge his decision by the same standards as if the case came here from the MSPB.

ject of proper performance standards in *Wilson v. Department of Health and Human Services* and *Jackson v. Environmental Protection Agency*, 770 F.2d 1048 (Fed.Cir.1985). Under that decision, the standards here involved—as they were applied to this petitioner—pass muster (though perhaps not with flying colors). First, those standards[3] were close parallels to those applicable in *Jackson's* case (*see* 770 F.2d at 1055), similarly governing the work of a professional employee who had to expect to be treated as a professional and whose work necessarily called for some subjective evaluation. The standards here, like those in *Jackson*, "are sufficiently objective and precise in the sense that most [professional] people will understand what they mean and what they require...." 770 F.2d at 1055. Second, just as in *Jackson's* case, 770 F.2d at 1056, DePauw's superiors filled him in, in detail, as to exactly what was demanded of him. His immediate supervisor after reassignment (Ms. Hagelin) gave him (in her interim appraisal of February 1984) very specific criticisms and a list of what was expected from him. She told him that she would be available, at any time during his improvement period, to discuss problems with him and urged him to work closely with her. During that improvement period, both his first and second level supervisors

worked with him. With the help of his supervisors' criticism and with the further opportunity to consult with them, petitioner should have known his obligations. The performance standards thus met the statutory criteria.[4]

### III.

■ Another assault on the decision below is that there was no substantial evidence sustaining petitioner's failure to meet the performance standards.[5] In support of the charges, the ITC submitted to the arbitrator (a) documentary evidence consisting of Ms. Hagelin's detailed and specific interim appraisal of petitioner's work (in February 1984) as well as the detailed removal charges found as true by ITC, and (b) oral testimony of Mr. Trezevant (petitioner's upper-level supervisor who was thoroughly familiar with DePauw's case)[6] summarizing with specific examples the low-level of petitioner's work.[7] This combination was enough to make a prima facie case (*Schapansky v. Department of Transportation*, 735 F.2d 477, 482 (Fed. Cir.1984)), which DePauw did not even seek to rebut by introducing any evidence to the contrary. In the absence of any rebuttal, the arbitrator could and did accept the ITC's case as sufficient proof. *See*

3. One standard provided:
   Usually identifies and anticipates problems and takes corrective action; usually meets requirements for questionnaire construction and data collection to support project; meets all statutory deadlines and usually meets other deadlines; reports are substantially complete with few errors, and require few extensive changes due to omissions or lack of analysis.
   Another stated:
   Usually understands most facets of producing a commodity and usually understands economic and market factors operating within a commodity sector; with few major exceptions, non-investigative reports, Summaries of Trade and Tariff Information, trade information monitoring system, correspondence and other output reflect up-to-date data (changing conditions in assigned commodities especially concerning technology, uses, volume of imports and exports, volume of production, and tariff treatment and history) and address eco-

nomic, trade and tariff issues; output requires few extensive changes in data or content.

4. We repeat in this case the caution set forth in Part II of *Weirauch v. Department of the Army*, 782 F.2d 1560 (Fed.Cir. 1986), also decided this day.

5. Unacceptable performance is "performance of an employee which fails to meet established performance standards in one or more critical elements of such employee's position." *Lovshin v. Department of the Navy*, 767 F.2d 826, 834 (Fed.Cir.1985), quoting 5 U.S.C. § 4301(3).

6. The arbitrator pointed out that Trezevant headed a division with only 17 employees, that he was in close touch with the work of his division, that he was fully prepared to testify in depth about petitioner's work record, and that he was subject to able and searching cross-examination.

7. Ms. Hagelin, the first-level supervisor, was not available at the time of the arbitrator's hearing.

*Hale v. Department of Transportation,* 772 F.2d 882, 885–86 (Fed.Cir.1985).

DePauw seeks to have us reject the detailed agency charges (accepted by ITC as true) as forming any part of management's valid proof, but there is no reason why the arbitrator must refuse to accept such specific documentary materials[8] which, in this instance, were strongly supported by Ms. Hagelin' interim appraisal and by Trezevant's oral testimony. Nor was it necessary that the ITC produce petitioner's own materials for *de novo* evaluation by the arbitrator. The arbitrator could base his determination on the "overwhelming evidence" (as the arbitrator put it) proffered by ITC. As the arbitrator said:

> The evidence offered as to the [petitioner's] work record subsequent to his transfer to the General Manufacturers Division established that he had displayed a consistently unacceptable level of performance in two of the four critical elements of his position. The documentation offered in support of those performance standards shows that his work was replete with errors and numerous deficiencies.

### IV.

The last of petitioner's complaints is that the arbitrator did not adequately discuss DePauw's actual performance in the light of the elements of the performance standards he was held to have failed to meet. Although the arbitrator's decision might have been fuller on this precise point, we are satisfied from his entire decision that he canvassed the full record, was aware of the requirements of the performance standards, and understood and accepted the agency's strong proof of petitioner's specific deficiencies. DePauw's failure to present rebuttal evidence as those matters made it acceptable for the arbitrator to be as general as he was in his treatment of the uncontradicted ITC evidence.

The decision of the arbitrator is

*Affirmed.* [9]

---

8. The letter of charges was not merely conclusory but set forth in great factual detail petitioner's errors and deficiencies; the specifications were so specific that they could be disputed by petitioner, if he desired to do so.

9. Petitioner does not raise before us any claim as to his asserted handicapped condition or as to an alleged conspiracy against him by his supervisors.