UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD
2015 MSPB 31

Docket No. AT-0432-13-7724-I-2

Valerie Ann Thompson,
Appellant,
v.
Department of the Army,
Agency.

April 8, 2015

Bernard H. Dempsey, Esquire, Winter Park, Florida, for the appellant.

Laura A. Cushler, Esquire, and Jeff Fullmer, Orlando, Florida, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## OPINION AND ORDER

¶1      The agency has filed a petition for review of the initial decision that reversed the appellant's removal under 5 U.S.C. chapter 43. For the reasons set forth below, we DENY the petition for review and AFFIRM the initial decision.

## BACKGROUND

¶2      The appellant is an NH-0343-03 Program Analyst for the agency. MSPB Docket No. AT-0432-13-7724-I-1 (I-1), Initial Appeal File (IAF), Tab 8, Subtab 4a. The appellant's duties in that position include various functions relating to

financial management of agency programs, allocation of program resources, and adjustments to program objectives and policies. *Id.*, Subtab 4*l* at 2.

¶3        The appellant's position is subject to an Office of Personnel Management (OPM) demonstration project known as the "Contribution-based Compensation and Appraisal System" (CCAS). *See* 64 Fed. Reg. 1426 (Jan. 8, 1999). The intent is to implement a "contribution-based" appraisal system as opposed to the "performance-based" systems normally contemplated under 5 U.S.C. chapter 43. 64 Fed. Reg. at 1451-52, 1480. Positions under CCAS are grouped into four "broadbands," rather than assigned particular grades and steps as under the General Schedule. *Id.* at 1450. Contribution is rated through "contribution scores" in each of the following critical factors:[1]  (1) Problem Solving, (2) Teamwork/Cooperation, (3) Customer Relations, (4) Leadership/Supervision, (5) Communication, and (6) Resource Management. *Id.* at 1427, 1452. Each factor has multiple levels of increasing contribution corresponding to the broadband levels and contains descriptors for each respective level within the relevant career path. *Id.* at 1452. Because CCAS is a contribution-based system, undercontributing employees are subjected to "contribution-based," rather than "performance-based," actions. *Id.* at 1480-81. Acceptable contribution for any given broadband is determined by reference to the "contribution score" assigned to that broadband, i.e., the contribution level expected of an employee occupying a position under that broadband, and the opportunity to demonstrate acceptable performance under 5 C.F.R. § 432.103(d) has been replaced by the analogous "contribution improvement period" (CIP). 64 Fed. Reg. at 1428, 1452, 1480-81. Nevertheless, despite the changes in terminology and major concepts, contribution-based actions under CCAS share similarities with traditional

---

[1] "Critical factor" has the same meaning as "critical element" under 5 C.F.R. § 432.103(b). 64 Fed. Reg. at 1480-81.

performance-based actions under 5 U.S.C. chapter 43 and are appealable to the Board under that chapter. 64 Fed. Reg. at 1481.

¶4    Turning to the facts of this case, on April 16, 2013, the appellant's supervisor placed her on a 60-day CIP. I-1, IAF, Tab 8, Subtab 4e. The CIP notice identified five specific problems with the appellant's work contributions in the Problem Solving, Communication, and Resource Management factors, as well as six specific actions that she was required to take in order to bring her contribution to an acceptable level. *Id.* It provided for weekly training and status meetings between the appellant and her supervisor, the Business Manager, and the Associate Chief Financial Manager–Programs. *Id.* at 2. It also provided for biweekly progress meetings. *Id.* On July 30, 2013, after the CIP expired, the appellant's supervisor proposed her removal based on a charge of "Unsatisfactory Work Performance," citing numerous instances of unsatisfactory contribution during the CIP in the areas of Problem Solving, Communication, and Resource Management. *Id.*, Subtab 4d. On August 29, 2013, the agency issued a final decision removing the appellant. *Id.*, Subtab 4c.

¶5    The appellant filed the instant Board appeal, arguing among other things that the agency's action was based on age discrimination and retaliation for prior equal employment opportunity activity.[2] I-1, IAF, Tab 1 at 4-5; I-2, IAF, Tab 26 at 1-2. After a hearing, the administrative judge issued an initial decision reversing the removal on the merits. ID at 2, 12-13. Specifically, he found that the agency failed to carry its burden of showing by substantial evidence that the appellant's contribution under the CIP was unacceptable and that the agency provided her a reasonable opportunity to improve. ID at 4-9. The administrative

---

[2] The appellant also claimed that the agency committed harmful procedural error. MSPB Docket No. AT-0432-13-7724-I-2 (I-2), IAF, Tab 26 at 2. However, because the administrative judge reversed the appellant's removal on the merits, he did not reach this issue. I-2, IAF, Tab 46, Initial Decision (ID) at 12. Neither party challenges this well-reasoned finding on review.

judge also found that the appellant failed to prove her affirmative defenses of age discrimination and retaliation for EEO activity.[3] ID at 9-12.

¶6        The agency has filed a petition for review, arguing that it provided substantial evidence to show that the appellant's contribution during the CIP was inadequate and that the CIP provided her a reasonable opportunity to improve. I-2, Petition for Review (PFR) File, Tab 1 at 10-15.  The petition for review includes a large amount of documentary evidence.  PFR File, Tab 1 at 11, 17-94, Tabs 3-7.  The appellant has filed a response in opposition.  PFR File, Tab 11.

## ANALYSIS

¶7        The administrative judge found that the elements of a typical chapter 43 appeal do not apply to an appeal of a contribution-based action under the CCAS demonstration project.  ID at 2-4; *cf. White v. Department of Veterans Affairs*, 120 M.S.P.R. 405, ¶ 5 (2013) (listing the usual elements of a performance-based action appeal under 5 U.S.C. chapter 43).  Rather, the administrative judge found, and neither party disputes, that, to prevail in an appeal of a CCAS contribution-based action, the agency must show by substantial evidence that: (1) it notified the appellant that she would be placed on a CIP; (2) it informed her of what she must do during the CIP to demonstrate acceptable contribution and warned her that failure to do so could result in an adverse action; (3) it gave her a reasonable opportunity to demonstrate acceptable contribution during the CIP; and (4) the appellant's contribution was unacceptable during the CIP.[4]  ID at 4. In this case, only elements 3 and 4 are at issue.

---

[3] The appellant does not challenge the administrative judge's findings on her affirmative defenses.

[4] These requirements are consistent with the OPM demonstration project, which permits a reduction in pay or removal after an agency places an employee on a CIP that advises her regarding how her contribution is inadequate, what improvements are required, how she might achieve adequate contribution, the assistance that the agency will provide,

<u>The agency failed to prove by substantial evidence that the appellant's contribution during the CIP was unacceptable.</u>

¶8    In his initial decision, the administrative judge found that the agency presented "almost no evidence" to show that the appellant's contribution during the CIP was unacceptable.  ID at 6.  He found that the agency's response to the acknowledgment order, "where supporting evidence is typically found, contains none whatsoever."  ID at 5; I-1, IAF, Tab 8.  He further found that the only other documentary evidence that the agency provided consisted of a few email messages that bore no apparent relation to the allegations in the notice of proposed removal.  ID at 5; I-1, IAF, Tab 8, Subtab 4d; I-2, IAF, Tab 16 at 16-22.  Finally, the administrative judge found that the agency adduced no testimony at the hearing to shed any light on the significance of these emails and that the appellant's supervisor provided only "fleeting" testimony regarding a couple of the specifications in the notice of proposed removal.  ID at 5-6.

¶9    On review, the agency argues that the administrative judge ignored the "mountain" of evidence that it provided to show that the appellant's performance during the CIP was inadequate.  PFR File, Tab 1 at 10.  The agency asserts that this evidence is found in (1) the appellant's supervisor's testimony, (2) two counseling statements, (3) the notice of proposed removal, (4) the Business Manager's sworn statement, (5) nine pages of unsatisfactory performance examples, (6) a mid-point CCAS review, and (7) various documents found in its prehearing submissions.  *Id*.  We will address each of these items in turn.

¶10   Regarding the supervisor's testimony, the agency asserts that the supervisor testified for over 7 hours, but it does not explain what the testimony was about or how the administrative judge's characterization of it was inaccurate.  *Id*.; ID at 5-6.  A petition for review must contain sufficient specificity for the

---

and the consequences for failure to improve.  64 Fed. Reg. at 1481.  The employee is to be afforded a reasonable opportunity to improve.  *Id.*

Board to ascertain whether there is a serious evidentiary challenge justifying a complete review of the record. *Tines v. Department of the Air Force*, 56 M.S.P.R. 90, 92 (1992). Under the Board's regulations, the petition for review itself must identify any procedural or adjudicatory errors and explain how they affected the outcome of the initial decision. 5 C.F.R. §§ 1201.114(b), 1201.115(b)-(c). In the absence of any explanation of why the supervisor's testimony warrants a change in the outcome of the appeal, we will not review 7 hours of hearing testimony to search for an answer.

¶11 Regarding the counseling statements that the agency identifies on review, they are dated December 10, 2012, and March 25, 2013, and pertain to matters that occurred before the agency placed the appellant on her April 16, 2013 CIP. PFR File, Tab 1 at 10; I-1, IAF, Tab 8, Subtabs 4h-4i. We find that they are immaterial to the outcome of the appeal because the matters described in these counseling memoranda are not included among the specific alleged incidents of poor performance that served as the basis for the proposed removal. I-1, IAF, Tab 8, Subtab 4d. As a matter of due process, an agency must provide an employee with notice and an opportunity to respond to information material to a proposed removal. *See Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1376 (Fed. Cir. 1999) ("procedural due process guarantees are not met if the employee has notice only of certain charges or portions of the evidence and the deciding official considers new and material information"); *Silberman v. Department of Labor*, 116 M.S.P.R. 501, ¶¶ 12, 14 (2011) (finding that the deciding official's consideration of prior supervisory memoranda not listed in the proposal notice violated the appellant's right to due process). Moreover, if an employee demonstrates acceptable performance during an improvement period, the agency may not remove her based solely on deficiencies which preceded and triggered the improvement period. *Brown v. Veterans Administration*, 44 M.S.P.R. 635, 640 (1990).

¶12　　　　As for the notice of proposed removal itself, the Board and the U.S. Court of Appeals for the Federal Circuit have found that a detailed proposal notice, such as this one, can constitute part of the agency's valid proof of its charges. I-1, IAF, Tab 8, Subtab 4b; *see DePauw v. U.S. International Trade Commission*, 782 F.2d 1564, 1566-67 (Fed. Cir. 1986); *Towne v. Department of the Air Force*, 120 M.S.P.R. 239, ¶ 24 (2013); *Fernand v. Department of the Treasury*, 100 M.S.P.R. 259, ¶ 10 (2005), *aff'd*, 210 F. App'x 992 (Fed. Cir. 2007); *Gill v. Department of the Navy*, 34 M.S.P.R. 308, 311 (1987).　However, the proposal notice on its own is not enough for the agency to meet its burden of proof; it must be accompanied by corroborating evidence, which we find in this case to be lacking.　*See Delancy v. U.S. Postal Service*, 88 M.S.P.R. 129, ¶ 8 (2001); *Perez v. Railroad Retirement Board*, 65 M.S.P.R. 287, 289 (1994).

¶13　　　　Regarding the Business Manager's statement, we note that it is not "sworn" as the agency claims it is on review.　PFR File, Tab 1 at 10; I-1, IAF, Tab 8, Subtab 4b at 1-3; *see Social Security Administration v. Whittlesey*, 59 M.S.P.R. 684, 692 (1993) (a sworn statement has greater weight than one that is unsworn), *aff'd*, 39 F.3d 1197 (Fed. Cir. 1994) (Table).　Furthermore, to the extent that this unsworn statement addresses the appellant's contribution during the CIP, it is couched in generalities and does not specifically address any of the allegations set forth in the notice of proposed removal.　I-1, IAF, Tab 8, Subtab 4b at 2-3. Nevertheless, we find that the Business Manager's statement lends some general credence to the agency's allegations that the appellant made multiple errors in her checkbooks and that on April 26, 2013, the appellant provided the agency inaccurate information due to her failure to understand what constitutes a "direct mission" program.　I-1, IAF, Tab 8, Subtab 4b at 3, Subtab 4d at 4, 6-7.

¶14　　　　As for the materials accompanying the Business Manager's statement, these appear to consist of some of the appellant's work product from the CIP. I-1, IAF, Tab 8, Subtab 4b at 4-12.　These documents contain annotations in red, some of which are not legible or contain unexplained acronyms, codes, and

abbreviations. *Id*. In any event, the appellant's work is of a technical nature and any errors that these documents may contain are not apparent on their face, and the annotations themselves do little to clarify the matter. Nor does the agency attempt to link these documents to the allegations in its notice of proposed removal—the allegations that it is required to support by substantial evidence in order to carry its burden in this appeal. Nevertheless, we have compared these materials to the notice of proposed removal on our own, and we have linked them to two specific allegations: the appellant failed to update the heading of a worksheet to include congressional reductions, and she used an incorrect "WBS." I-1, IAF, Tab 8, Subtab 4b at 4, Subtab 4d at 7. The agency alleged that these errors went to the appellant's contributions in the Resource Management factor. I-1, IAF, Tab 8, Subtab 4d at 6-7.

¶15    Regarding the documents contained in the agency's prehearing submissions, the administrative judge was unable to connect them to any specific allegations found in the notice of proposed removal.[5] ID at 5; I-2, IAF, Tab 16 at 16-30. Despite this, the agency has not attempted to clarify the import of these documents on review. Nevertheless, we have reviewed them independently, and we are able to connect one email with an allegation in the notice of proposed removal. Specifically, the agency alleged that, on May 21, 2013, in response to a request for funding, the appellant attempted to provide funds from an improper source and without following the proper procedures. I-1, IAF, Tab 8, Subtab 4d at 6. One of the email chains that the agency submitted appears to support this. I-2, IAF, Tab 16 at 19-22. The agency alleged that this error went to the Communications factor. I-1, IAF, Tab 8, Subtab 4d at 6.

---

[5] The administrative judge stated that there were only five exhibits attached to the agency's prehearing submissions, when in fact there were eight. ID at 5; I-2, IAF, Tab 16 at 7-30. However, we find that this adjudicatory error was not prejudicial to the agency and provides no basis to reverse the initial decision. *Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984).

¶16        Finally, the agency has submitted for the first time on review approximately 500 pages of documentary evidence "[t]o bolster the supervisor's testimony."  PFR File, Tab 1 at 11, 17-94, Tabs 3-7.  We will not consider this evidence because the agency has not shown that it was previously unavailable despite its due diligence.  *See Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 214 (1980) (under 5 C.F.R. § 1201.115, the Board generally will not consider evidence submitted for the first time with the petition for review absent a showing that it was unavailable before the record was closed despite the party's due diligence).  Although the agency asserts that it provided the appellant with some of this evidence during the discovery process, PFR File, Tab 1 at 11 & n.2, we find this fact immaterial.  It was incumbent upon the agency to provide this evidence to the administrative judge as well if it wanted the Board to consider it in reaching its decision.  The agency's failure to do so below precludes it from doing so on review.  Moreover, the agency has not shown that the evidence is material.  *See Russo v. Veterans Administration*, 3 M.S.P.R. 345, 349 (1980) (the Board will not grant a petition for review based on new evidence absent a showing that it is of sufficient weight to warrant an outcome different from that of the initial decision).  As with the documentary evidence that it submitted below, the agency has not drawn any particular connection between the evidence that it furnished on review and the allegations in the notice of proposed removal. The Board will not attempt to decipher 500 pages of technical evidence in the absence of an explanation of what that evidence is supposed to show.[6]

---

[6] The appellant characterizes the agency's untimely submission of this evidence as a stunt designed to taint the record and requests that the Board sanction the agency by refusing to consider its petition for review.  PFR File, Tab 11 at 25.  We find that the agency's belated attempt to provide this evidence does not merit a sanction and we therefore DENY the appellant's request.  *Cf. Hay v. U.S. Postal Service*, 106 M.S.P.R. 151, ¶ 10 (2007) (a party's untimely response to an administrative judge's order does not warrant sanctions absent a showing of prejudice).

¶17    As explained above, we find that the agency has provided some evidence to support some of the allegations in its notice of proposed removal. *Supra* ¶¶ 13-15. Specifically, we find that the agency has provided substantial evidence that, during the CIP, the appellant made two errors on the 2013 Common Training Instrument Architecture worksheet, *supra* ¶ 14, and that on May 21, 2013, the appellant attempted to provide funds from an improper source and without following the proper procedures, *supra* ¶ 15. There is no evidence that we can discern to establish the agency's numerous other allegations of errors, even under the "substantial evidence" standard of proof applicable to chapter 43 actions.[7]

¶18    As for the errors that the agency proved, we find that the agency failed to show by substantial evidence that they rendered inadequate the appellant's contributions in the Communication and Resource Management areas. There is no evidence of how these errors figure into the appellant's contribution scores or how many and what types of errors can normally be expected of an adequately-contributing employee in the appellant's position. This is not to say that the agency was required to establish a precise numerical limit on the number of errors that the appellant was allowed to commit or reduce its contribution assessment to a mathematical formula. *See Siegelman v. Department of Housing & Urban Development*, 14 M.S.P.R. 326, 330-31 (1983). Nevertheless, the Board requires some sort of objective criteria by which to gauge the appellant's contribution, and the agency has presented none—either by way of specific requirements in its contribution standards or by way of comparison to other NH-0343-03 Program Analysts' contributions in these areas. *See* 5 U.S.C.

---

[7] As explained above, we have considered the Business Manager's unsworn statement, but we find that it does not constitute substantial evidence of any of the remaining allegations in the notice of proposed removal because it addresses the appellant's performance during the CIP only in general terms. *Supra* ¶ 13; *cf. Adamsen v. Department of Agriculture*, 116 M.S.P.R. 331, ¶¶ 16-17 (2011) (finding an unsworn statement to be unreliable hearsay because it failed to identify firsthand knowledge of the relevant events or a factual basis for its conclusions).

§ 4302(b)(1) (performance standards must, to the maximum extent feasible, permit the accurate appraisal of performance based on objective criteria); *Thompson v. Department of the Navy*, 89 M.S.P.R. 188, ¶ 10 (2001) (comparing the appellant's performance to that of other employees in the same position). To be clear, we are not finding that the contribution standards under the CCAS are invalid. In fact, the administrative judge found that the CCAS demonstration project waives the requirement that the agency establish a performance system meeting the requirements of 5 U.S.C. § 4302. ID at 3. Still, the Board requires some evidence of what the CCAS specifically requires of the appellant in order to judge her contribution. In this case, we have none. *See* I-1, IAF, Tab 8, Subtab 4e at 1-2 (providing the appellant's goals for the CIP without indicating the specific targets for accuracy that might enable her to achieve the stated goal of a contribution score of 61 or higher), Subtab 4g at 1 (containing the appellant's April 2013 mid-year review, which lists her contribution standards in general terms).

¶19    The appellant's having committed four errors of unexplained import during the CIP, on its face, does not support a finding that her contribution was inadequate during that period. There is no evidence that these four errors were of such gravity that a reasonable person might conclude that the appellant's contribution during the CIP was inadequate solely based on their nature. *Cf. Thompson*, 89 M.S.P.R. 188, ¶¶ 2, 6, 9 (the three-error limit during the appellant's 92-day performance improvement plan was reasonable because the limit concerned relatively significant errors that could have serious effects on the value of the appellant's work). For these reasons, we agree with the administrative judge that the agency failed to show by substantial evidence that the appellant's contribution during the CIP was inadequate.

<u>The agency failed to establish by substantial evidence that the CIP provided the appellant a reasonable opportunity to improve.</u>

¶20     In finding that the agency failed to meet its burden on this element of the case, the administrative judge weighed conflicting testimony. Specifically, he credited the appellant's testimony that she had two meetings with her supervisor at the beginning of the CIP, and no other meetings thereafter, over the supervisor's testimony that she provided the appellant guidance almost every week and that the Business Manager and one of the appellant's coworkers would meet with the appellant when the supervisor herself was unable to meet. ID at 7-8; *see Thompson v. Farm Credit Administration*, 51 M.S.P.R. 569, 579 (1991) (the agency failed to afford a reasonable opportunity to improve where, among other things, the appellant did not receive the promised supervisory assistance); *Adorador v. Department of the Air Force*, 38 M.S.P.R. 461, 464-66 (1988) (same).

¶21     On review, the agency argues that, in reaching his conclusion, the administrative judge failed to assess the witnesses' credibility properly under *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987). PFR File, Tab 1 at 12-15. It offers an analysis of all the *Hillen* factors and explains why each one of them is either neutral or favors the supervisor's testimony over the appellant's.[8] *Id*. However, the administrative judge's credibility determinations relate to testimony given during a videoconference hearing. The Board must give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it

---

[8] The *Hillen* factors are as follows: (1) the witness's opportunity and capacity to observe the event or act in question; (2) the witness's character; (3) any prior inconsistent statement by the witness; (4) a witness's bias, or lack of bias; (5) the contradiction of the witness's version of events by other evidence or its consistency with other evidence; (6) the inherent improbability of the witness's version of events; and (7) the witness's demeanor. 35 M.S.P.R. at 458. This list is non-exhaustive. *Id*.

has "sufficiently sound" reasons for doing so.[9]  *Haebe v. Department of Justice*, [288 F.3d 1288](), 1301 (Fed. Cir. 2002).  For the reasons explained below, we find that the agency has not identified any such sufficiently sound reasons.

¶22        First, the agency argues that both the appellant and the supervisor had the same capacity to observe the events in question because both were in attendance at the meetings.  PFR File, Tab 1 at 12-13.  This is not true.  As the administrative judge pointed out, the supervisor testified that, when she was unable to meet with the appellant, two other individuals would meet with the appellant in her stead, but neither of these individuals testified at the hearing.[10] ID at 7-8 & n.5.  The appellant had a greater capacity than the supervisor to observe whether the meetings at which the supervisor was not present actually took place.

¶23        The agency also argues that the administrative judge erred in finding the appellant's character more trustworthy than the supervisor's.  PFR File, Tab 1 at 13.  The administrative judge made no such finding, and we further find probative character evidence to be lacking in this case.  Therefore, this credibility factor is entitled to little weight one way or the other.

---

[9] The Board has found that videoconference hearings afford administrative judges substantially the same opportunity to observe witness demeanor as do in-person hearings.  *Robertson v. Department of Transportation*, [113 M.S.P.R. 16](), ¶¶ 11-12 (2009);  *Koehler v. Department of the Air Force*, [99 M.S.P.R. 82](), ¶¶ 10-13 (2005).

[10] The agency argues that it had no reason to call these witnesses because they were not the appellant's supervisors and they were not responsible for administering the CIP. PFR File, Tab 1 at 14.  It is not clear why the agency, after reading the initial decision, still believes that only the appellant's supervisor or a CIP administrator could have had relevant testimony to offer.  The agency was on notice that the reasonableness of the opportunity to improve afforded to the appellant was in dispute.  I-2, IAF, Tab 13 at 38, 43-44.  It could have proffered documentary evidence, or first-hand testimony, or both to show that it afforded the appellant the weekly meetings described in the CIP notice.

¶24    The agency further argues that there are no prior inconsistent statements at issue, and that this credibility factor is irrelevant. *Id*. We agree, and note that the administrative judge did not cite to any inconsistent statements.

¶25    Regarding witness bias, the agency argues that the appellant's testimony is more likely to be biased than that of her supervisor because the appellant has more to lose in this case and because the supervisor could not hire a replacement for the appellant. *Id*. at 13-14. As an initial matter, we note that, even if the supervisor earnestly wished for the appellant to succeed during her CIP, this has little if any relevance to the supervisor's wishes for the outcome of the Board appeal of the removal that she herself proposed after the CIP was over. Furthermore, most testimony that an appellant is likely to give, other than admissions, can be characterized as self-serving, and the Board has found that an appellant's testimony should not be discredited solely on that basis. *Nicoletti v. Department of Justice*, 60 M.S.P.R. 244, 249 (1993); *Gamble v. U.S. Postal Service*, 6 M.S.P.R. 578, 580-81 (1981).

¶26    The agency also argues that the supervisor's version of events is corroborated by the evidence in the agency file, as well as the evidence that it offers on review. PFR File, Tab 1 at 14. We have reviewed the agency file. We find that the statement in the CIP notice promising regular meetings throughout the CIP is consistent with the supervisor's testimony, but we find that it has little probative value as to whether those meetings actually occurred. I-1, IAF, Tab 8, Subtab 4e at 2-3. We have considered statements in the notice of proposed removal that the appellant's supervisor "counseled" her about her errors on three different occasions—June 24, July 8, and July 18, 2013. I-1, IAF, Tab 8, Subtab 4d at 10-11. However, the agency has not identified any evidence to corroborate these assertions. *See Delancy*, 88 M.S.P.R. 129, ¶ 8. Furthermore, these assertions tend to show, at most, that the appellant received three of the promised

twenty-one meetings (fourteen weekly and seven biweekly) promised in the CIP notice.[11] I-1, IAF, Tab 8, Subtab 4e at 2-3. We also find that the Business Manager's statement contains corroborating evidence, i.e., that the appellant's supervisor met with the appellant on a weekly basis. I-1, IAF, Tab 8, Subtab 4b at 2. It further states that the Business Manager "sat down with [the appellant] on many occasions." *Id*. at 3. However, because this statement is unsworn, lacks specificity, and is based, at least in part, on secondhand information, we find that it has little evidentiary value. It appears that this lack of corroborating evidence weighed heavily in the administrative judge's decision to credit the appellant's version of events over the agency's. ID at 8. We agree with the administrative judge that, if the meetings took place as the agency asserted, there should have been some corroborating evidence such as meeting notes or memoranda for the agency to submit for the record. The agency's failure to submit any such evidence casts serious doubt on its version of events. *Id*. As for the evidence that the agency offers on review, for the reasons explained above, *supra* ¶ 16, we have not considered this evidence in reaching our decision. The agency also alleges that the appellant made other "self-serving" uncorroborated statements during an off-the-record discussion at the hearing. PFR File, Tab 1 at 14. This discussion, by the agency's own admission, was off the record, and hence, not a part of the record below. In any event, we will not consider the events that transpired during that conversation for purposes of impeaching the appellant's credibility on review. *See Bucci v. Department of Education*, 42 M.S.P.R. 47, 55 (1989) (evidence offered merely to impeach a witness's credibility generally is not considered new and material). To the extent that the record below contains evidence of this discussion, the agency has not provided us a specific citation that

---

[11] This is assuming that these "counselings" were, in fact, meetings of the type contemplated in the CIP notice—an assumption that we decline to make. I-1, IAF, Tab 8, Subtab 4e at 2-3.

would allow us to verify the claimed impeachment testimony. *See Tines*, 56 M.S.P.R. at 92.

¶27    The agency appears to argue that the administrative judge did not explain why he found the appellant's version of events more inherently probable than the supervisor's. PFR File, Tab 1 at 14. We disagree. The administrative judge found that it was improbable that regular meetings would have occurred throughout the CIP without those meetings being somehow documented. ID at 8. We see no error in the administrative judge's assessment.

¶28    Finally, the agency argues that the initial decision is flawed because the administrative judge failed to describe why he believed that the appellant's demeanor supported her credibility over the credibility of the supervisor. PFR File, Tab 1 at 15. As an initial matter, we note that an administrative judge's failure to discuss each *Hillen* factor does not mean that he did not consider them. *Social Security Administration v. Mills*, 73 M.S.P.R. 463, 475 (1996), *aff'd*, 124 F.3d 228 (Fed. Cir. 1997). In any event, the administrative judge explained that he perceived no untruthfulness in the appellant's testimony regarding the lack of weekly meetings, ID at 8, and we are satisfied that he gave due consideration to witness demeanor as part of his overall credibility determination.

¶29    The agency argues that the administrative judge's credibility determinations lack a factual basis and therefore must have been the product of anti-agency bias. PFR File, Tab 1 at 12, 15. As explained above, however, we find that the administrative judge's credibility determinations had an adequate factual underpinning. Moreover, in making a claim of bias or prejudice against an administrative judge, a party must overcome the presumption of honesty and integrity that accompanies administrative adjudicators. *Oliver v. Department of Transportation*, 1 M.S.P.R. 382, 386 (1980). An administrative judge's conduct during the course of a Board proceeding warrants a new adjudication only if the administrative judge's comments or actions evidence "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Bieber v. Department of*

*the Army*, 287 F.3d 1358, 1362-63 (Fed. Cir. 2002) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). We find that the agency's allegations of bias do not meet this standard. The mere fact that the administrative judge rules against a party does not establish bias. *Schoenrogge v. Department of Justice*, 76 M.S.P.R. 216, 220 (1997).

¶30    For these reasons, we find that the agency has not provided a sufficiently sound reason for the Board to overturn the administrative judge's credibility determinations. *See Haebe*, 288 F.3d at 1301. Although the agency presented some evidence that the appellant was afforded the weekly meetings promised in the CIP notice, we find no basis to disturb the administrative judge's finding that this did not constitute substantial evidence that the meetings took place, especially in light of the appellant's credible testimony to the contrary. *See Sandland v. General Services Administration*, 23 M.S.P.R. 583, 590-91 (1984) (although the agency presented a prima facie case that it afforded the appellant a reasonable opportunity to improve his performance, the appellant rebutted the agency's showing and the agency ultimately failed to meet its burden by substantial evidence). Because the agency failed to show by substantial evidence that it afforded the appellant the weekly meetings that it promised her at the beginning of the CIP, we agree with the administrative judge that the agency failed to show by substantial evidence that the appellant received a reasonable opportunity to improve.[12]    ID at 8-9; *see Thompson*, 51 M.S.P.R. at 579; *Adorador*, 38 M.S.P.R. at 465-66.

---

[12] The appellant argues on review that the CIP was insufficient because it was only 37 working days and that the contribution standards were never communicated to her. PFR File, Tab 11 at 13-16. Because resolution of these arguments would not change the outcome of the appeal, we decline to reach them. We note, however, that even a 30-day improvement period can satisfy an agency's obligation to provide an employee with a reasonable opportunity to improve. *See Melnick v. Department of Housing & Urban Development*, 42 M.S.P.R. 93, 101 (1989), *aff'd*, 899 F.2d 1228 (Fed. Cir. 1990) (Table).

ORDER

¶31        We ORDER the agency to cancel the appellant's removal and retroactively restore her effective September 27, 2013.  This action must be accomplished no later than 20 calendar days after the date of this decision.  *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984).  The agency must complete this action no later than 20 days after the date of this decision.

¶32        We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Back Pay Act and/or Postal Service Regulations, as appropriate, no later than 60 calendar days after the date of this decision.  We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order.  If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶33        We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and to describe the actions it took to carry out the Board's Order.  The appellant, if not notified, should ask the agency about its progress.  *See* 5 C.F.R. § 1201.181(b).

¶34        No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision in this appeal if the appellant believes that the agency did not fully carry out the Board's Order.  The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency.  5 C.F.R. § 1201.182(a).

¶35        For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation

necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

¶36        This is the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

NOTICE TO THE APPELLANT
REGARDING YOUR RIGHT TO REQUEST
ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set out at Title 5 of the United States Code (U.S.C.), sections 7701(g), 1221(g), 1214(g) or 3330c(b); or 38 U.S.C. § 4324(c)(4). The regulations may be found at 5 C.F.R. §§ 1201.201, 1202.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your attorney fees motion with the office that issued the initial decision on your appeal.

NOTICE TO THE APPELLANT REGARDING
YOUR FURTHER REVIEW RIGHTS

You have the right to request further review of this final decision.

Discrimination Claims: Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC). *See* Title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)). If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court.  *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with the district court no later than 30 calendar days after your receipt of this order.  If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of

prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e5(f) and 29 U.S.C. § 794a.


FOR THE BOARD:


_____
William D. Spencer
Clerk of the Board
Washington, D.C.

|  | **DFAS CHECKLIST**<br><br>**INFORMATION REQUIRED BY DFAS IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES OR AS ORDERED BY THE MERIT SYSTEMS PROTECTION BOARD** |
|---|---|

AS CHECKLIST: INFORMATION REQUIRED BY IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES

## CIVILIAN PERSONNEL OFFICE MUST NOTIFY CIVILIAN PAYROLL OFFICE VIA COMMAND LETTER WITH THE FOLLOWING:

1. Statement if Unemployment Benefits are to be deducted, with dollar amount, address and POC to send.

2. Statement that employee was counseled concerning Health Benefits and TSP and the election forms if necessary.

3. Statement concerning entitlement to overtime, night differential, shift premium, Sunday Premium, etc, with number of hours and dates for each entitlement.

4. If Back Pay Settlement was prior to conversion to DCPS (Defense Civilian Pay System), a statement certifying any lump sum payment with number of hours and amount paid and/or any severance pay that was paid with dollar amount.

5. Statement if interest is payable with beginning date of accrual.

6. Corrected Time and Attendance if applicable.

## ATTACHMENTS TO THE LETTER SHOULD BE AS FOLLOWS:

1. Copy of Settlement Agreement and/or the MSPB Order.

2. Corrected or cancelled SF 50's.

3. Election forms for Health Benefits and/or TSP if applicable.

4. Statement certified to be accurate by the employee which includes:

 a. Outside earnings with copies of W2's or statement from employer.
 b. Statement that employee was ready, willing and able to work during the period.
 c. Statement of erroneous payments employee received such as; lump sum leave, severance pay, VERA/VSIP, retirement annuity payments (if applicable) and if employee withdrew Retirement Funds.

5. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

  a. Employee name and social security number.
  b. Detailed explanation of request.
  c. Valid agency accounting.
  d. Authorized signature (Table 63)
  e. If interest is to be included.
  f. Check mailing address.
  g. Indicate if case is prior to conversion.  Computations must be attached.
  h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected. (if applicable)

## Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement. (if applicable)

2. Copies of SF-50's (Personnel Actions) or list of salary adjustments/changes and amounts.

3. Outside earnings documentation statement from agency.

4. If employee received retirement annuity or unemployment, provide amount and address to return monies.

5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)

6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.

7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)
  a. Must provide same data as in 2, a-g above.
  b. Prior to conversion computation must be provided.
  c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.